## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Chaim Lowenstein,

        Plaintiff,

v.

Tom Kane, Jr. and
Dietz-Kane & Associates Insurance
Agency, Inc.,

        Defendants.

CIVIL NO.: 10-CV-02857-SRN-AJB

**DEFENDANTS' MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR
PARTIAL JUDGMENT ON THE
PLEADINGS OR PARTIAL SUMMARY
JUDGMENT**

Defendants Tom Kane, Jr. ("Kane") and Dietz-Kane & Associates Insurance

Agency, Inc. ("Dietz-Kane"), by their undersigned counsel, respectfully submit this

Memorandum of Law in support of their motion for partial judgment on the pleadings or partial

summary judgment.

## <u>INTRODUCTION</u>

This motion presents the Court with the unique opportunity to decide whether a

Complaint that is utterly devoid of sufficient facts to state a claim should be permitted to go to

trial.

This matter is actually a dispute between business partners, but masquerading as a

copyright and trademark infringement case at the hands of Plaintiff. Plaintiff's pretended

intellectual property claims are nothing more than a frivolous and vexatious gambit by Plaintiff

to win ill-gotten damages.   There will be much more said about this subject in Defendants'

motion for sanctions to be heard by the Court contemporaneously herewith.

**STATEMENT OF DOCUMENTS RELIED UPON**

1.  Plaintiff's Complaint, cited as "(Comp. ¶ ___), hereinafter. [Docket No. 1]

2.  Answer and Counterclaims of Tom Kane, Jr., cited as "Kane Ans. ¶ ___)", hereinafter. [Docket No. 3]

3.  Answer and Counterclaims of Dietz-Kane & Associates Insurance Agency, Inc., cited as "(Dietz-Kane Ans. ¶ ___)", hereinafter. [Docket No. 5]

4.  Plaintiff's Reply to Tom Kane, Jr.'s Answer and Counterclaims, cited as "(Reply to Kane ¶ ___)", hereinafter. [Docket No. 8]

5.   Plaintiff's Reply to Dietz-Kane & Associates Insurance Agency, Inc.,'s Answer and Counterclaims, cited as "(Reply to Dietz-Kane ¶ ___)", hereinafter. [Docket No. 9]

6.  Affidavit of Tom Kane, Jr. at Exhibit A and cited as "(Aff. Kane, ¶ __)", hereinafter.

7.  Plaintiff's deposition of Tom Kane, Jr. and exhibits thereto, and attached to Affidavit of Thomas J. Okoneski at Exhibit B and cited as "(Kane Depo. ___)", and hereinafter.

8.  Tom Kane, Jr.'s Answers to Interrogatories, Exhibit #1 to Kane Depo., cited as "(Kane Ans. To Interrog. _____)", hereinafter.


**STATEMENT OF FACTS**


Kane and Plaintiff are equal members of ArmorCore Technologies, LLC, which is organized in Delaware ("ArmorCore").[1]  ArmorCore was in the business of developing and

---

[1] (Kane's Ans. ¶'s 21 and 22 of Counterclaims); Admitted by Plaintiff (Reply to Kane ¶'s 21and 22).

selling electronic data storage and data recovery equipment and software.[2]  For reasons that will become obvious herein, ArmorCore is no longer actively in business, but neither has it been dissolved.[3]  Plaintiff claims to be the owner of certain copyrighted and trademarked works (the "Works") related to his alleged coffee business.[4]  Plaintiff's alleged coffee business is in no way connected to AmorCore's business.[5]

While an officer of ArmorCore,  Plaintiff obtained an American Express credit card ("Amex Card") in the name of ArmorCore, and which created a personal re-payment obligation for Kane.[6]  This was done without Kane's authorization or knowledge.[7]  Amex began collection activities against ArmorCore and Kane for charges made to the card by Plaintiff.[8]  Kane filed a credit card fraud complaint with Amex.[9] While defending against Amex's attempts to collect from him, Kane learned that Plaintiff had used the Amex Card to pay for the web-hosting of his coffee business Works through ArmorCore's account at Blue Razor, now known as GoDaddy.[10]

Plaintiff had been assigned the duty of administrating ArmorCore's web-hosting matters when the company began business.[11]  Due to the Amex Card and other issues, it became obvious to Kane that Plaintiff was misusing his administrator's duties at ArmorCore to further his own alleged coffee business[12] and possibly conducting illegal activities at the expense of ArmorCore

---

[2] (Kane's Ans. ¶ 18 of Counterclaims); Admitted by Plaintiff (Reply to Kane ¶18).
[3] (Kane Ans. , Counterclaims in general).
[4] (Comp. ¶'s 10, 11, and 12).
[5] (Aff. Kane, ¶ 3).
[6] (Kane Ans. ¶'s 28 and 29 of Counterclaims); Admitted by Plaintiff (Reply to Kane ¶'s 28 and 29).
[7] (Kane's Ans. ¶ 28 of Counterclaims); (Kane Ans. To Interrog., No. 9(b)).
[8] (Kane Ans. ¶ 35 of Counterclaims);
[9] (Kane Ans. ¶ 36 of Counterclaims);
[10] (Kane Ans. ¶'s 43, 44 45 of Counterclaims);
[11] (Aff. Kane, ¶ 4).
[12] (Kane Ans. ¶'s 43, 44 45 of Counterclaims);

and Kane.[13]   To deter further breaches of Plaintiff's fiduciary duties owed to ArmorCore and

Kane, Kane attempted to remove Plaintiff as administrator of AmorCore's account at

GoDaddy.[14]   After a thorough investigation, GoDaddy determined that Kane had the right to be

designated administrator of ArmorCore's account since all the domain names and e-mail

addresses hosted thereunder had been paid for with the ArmorCore/Kane credit card.[15]   The

effect of these actions was that Plaintiff could no longer access ArmorCore's web-hosting site at

GoDaddy.[16]   The account remained under the control of ArmorCore, albeit with Kane as

administrator and not Plaintiff.[17]   Kane's becoming the administrator of the account turned out to

be wise personal and business move, as we shall see from the following.

    While Kane was replacing Plaintiff as administrator, Kane was visited by an investigator

from the United States Postal Inspection Service ("Investigator").[18]   The Investigator told Kane

she was investigating claims made against Plaintiff for mail fraud.[19]   Plaintiff's alleged criminal

activity consisted of fraudulently obtaining manufacturers' rebates from various computer

industry companies.[20]  The Investigator knew that some of Plaintiff's illegal e-mail

correspondence had come through ArmorCore's e-mail accounts hosted by GoDaddy and that

some of Plaintiff's fraudulently obtained rebate checks had been delivered to ArmorCore's postal

---

[13]   (Kane Ans. ¶ 42 of Counterclaims); (Kane Ans. To Interrog., No. 6); (Kane Depo. at 15, 16, 17).

[14]   (Kane Ans. ¶'s 44, 45, 46, 47, and 48 of Counterclaims); (Kane Ans. To Interrog., No. 2, 9(b)).

[15]   (Kane's Ans. ¶'s 45 and 46 of Counterclaims); (Kane Ans. To Interrog., No. 2, 9(b)).

[16]   (Kane's Ans. ¶'s 46 and 47 of Counterclaims); Admitted by Plaintiff (Reply to Kane ¶ 47).

[17]   (Id.)

[18]   (Kane's Ans. ¶ 50 of Counterclaims); Kane Depo. at 13, 14, 15).

[19]   (Kane's Ans. ¶ 51 of Counterclaims); (Kane Ans. To Interrog., No. 2, 6, 9(a)).

[20]   (Kane's Ans. ¶'s 42 and 51 of Counterclaims); (Kane Ans. To Interrog., No. 2, 6, 9(a)): (Kane Depo at 13-17).

address in St. Paul, MN.[21]   Essentially, because Kane was a member of ArmorCore, he was being accused of participating in Plaintiff's mail fraud![22]   Fortunately for Kane, he was eventually able to prove to the Investigator that he was not complicit in Plaintiff's alleged mail fraud schemes.[23]  A significant element of his proof was to show the Investigator how Plaintiff was able to misuse ArmorCore's domain names and ArmorCore's account at GoDaddy for his own personal schemes.[24]

More importantly to this motion, Plaintiff had by this time started threatening Kane with copyright and trademark infringement lawsuits merely on the basis that Kane had replaced him as the web-hosting administrator for ArmorCore.[25]   Plaintiff argued that as a result of being relieved of his duties as administrator of ArmorCore's account at GoDaddy, he could not use his own coffee business domain names[26]   Both the Investigator and Kane believed that Plaintiff was attempting to coerce Kane, under threat of intellectual property litigation, to return to Plaintiff his ability to manipulate ArmorCore's account at GoDaddy.  Plaintiff's presumed purpose was to further his own illegal activities and/or to remove evidence of his illegal activities.  The Investigator requested of Kane that he not allow Plaintiff to control ArmorCore's account at GoDaddy until the United States had completed its investigation.[27]  Kane did as asked, Plaintiff

---

[21]   (Kane's Ans. ¶'s 51 and 52 of Counterclaims); (Kane Depo. at 13-17).
[22]   (Id.).
[23]   (Id.).
[24]   (Id.).
[25]   (Comp. ¶ 18); Admitted by Kane (Kane's Ans. ¶ 12).
[26]   (Comp. ¶ 14).
[27]   (Kane's Ans. ¶ 53 of Counterclaims); (Aff. Kane, ¶ 5); (Kane Ans. to Interrog., No. 6).

was indicted for mail fraud[28] , and now Kane has been subjected to Plaintiff's meritless copyright and trademark infringement law suit.[29]

At best, if there is such a thing in these circumstances, these sole members of an LLC should be arguing (as Defendants' have done in their counterclaims) about breaches of fiduciary duty by organizers and co-members of an LLC and what business related damages might accrue therefrom.   That's it.   For his own personal reasons (which will be discussed at length in the motion for sanctions) Plaintiff did not sue on any business related theories. Instead, Plaintiff contrived both copyright and trademark claims. The contrivance is so spurious that Plaintiff has not alleged even a single material fact indicative of trademark infringement or attached even one example of "copied" material to his Complaint.[30]   Stripped of his claims that are clearly unsupported by any facts, Plaintiff has absolutely no viable claims in this action.   Therefore, the Court should dismiss Plaintiff's Complaint.   If the Court feels compelled to look at matters outside of the Pleadings in considering this motion, then it should grant summary judgment in favor of Defendants on all of Plaintiffs alleged claims.


## STATEMENT OF ISSUES

1.    Should Plaintiff's claims for trademark infringement, unfair competition and violation of

the Minnesota Deceptive Trade Practices Act be dismissed?

---

[28] Plaintiff did plead guilty to mail fraud, but has since attempted to withdraw his plea on the basis that same was taken out of context (*as recently told to Kane by the Investigator*). (Kane Depo. at 53, 54).

[29]  Actually, this action is the second time Kane and Dietz-Kane have been subjected to Plaintiff's meritless copyright and trademark infringement claims. Plaintiff commenced substantially the same action in United States District Court for the Eastern District of New York in 2008.  The case against Kane and Dietz-Kane was dismissed for lack of jurisdiction. *See,* Docket No. 08-CV-04730 (SLT) (LB).

[30]  *See,* Plaintiff's Complaint, in general. [Docket No. 1].

2.      Should Plaintiff's claim for copyright infringement be dismissed?

3.      Should plaintiff's claim for conversion be dismissed?

## ARGUMNETS AND AUTHORITIES

## I.      STANDARD OF REVIEW.

A.  When deciding a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), the court views all facts set forth in the pleadings in a light most favorable to the non-movant and draws all reasonable inferences therefrom in their favor. *Ashley County v. Pfizer*, 552 F.3d 69, 663 (8th Cir. 2009).

1. "Judgment on the pleadings is appropriate only when there is no dispute as to the material facts and the moving party is entitled to judgment as a matter of law." *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006).

2. The court evaluates a motion for judgment on the pleadings under Rule 12(c) under the same standard as a motion brought under Rule 12(b)(6).  *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

a. Under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948, 173 L. Ed.2d 868 (2009)(quoting *Bell ATT Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed.2d 929 (2007)).

b. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

    c.  A plaintiff's obligation to provide the grounds of his entitlement to relief "requires

more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Twombly*, 550 U.S. at 555.


B.  If matters outside the pleadings are presented to and not excluded by the Court, then the

court should treat the motions as a motion for summary judgment and furnish the parties a

reasonable opportunity to present all material made pertinent to the motion.  Fed. R. Civ. P.

12(c);  *National Car Rental Sys., Inc. v. Computer Assoc. Int'l, Inc.*, 22 U.S.P.Q.2d 1375

(1992).

    1.  Summary judgment is appropriate where no genuine issue of material fact exists and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

*Celotex Corp. v. Catnett*, 477 U.S. 517, 323 (1986).

    2.  In determining whether summary judgment is appropriate, the court views the

evidence in a light most favorable to the moving party and all reasonable inferences must

be drawn in favor of that party.  *Anderson v. Linerty Lobby, Inc.*, 477 U.S. 242, 250

(1986).


II.      **PLAINTIFF'S COUNTS FOR TRADEMARK INFRINGEMENT, VIOLATION**

      **OF THE MINNESOTA DECEPTIVE TRADE PRACTICES ACT, AND  UNFAIR**

      **COMPETITION AND SHOULD BE DISMISSED.**

A.      <u>Trademark Infringement.</u> To prevail on a claim for trademark infringement, the

plaintiff must establish (1) that it has a valid trademark; and (2) a likelihood of confusion is

present between the plaintiff's trademark and the allegedly infringing use by the defendant.

*B&B Hardware, Inc. v Hargis Indus., Inc.*, 569 F.3d 383, 389 (8th Cir. 2009); *Davis v. Walt Disney Co.*, 393 F.Supp.2d 839 (D. Minn. 2005).


   B.      <u>Deceptive Trade Practices Act.</u>  Because claims for deceptive trade practices under Minnesota statute require the same analysis as claims under the federal Lanham Act, if the Plaintiff cannot make a prima facie case for violation of the Lanham Act, it is proper to also dismiss parallel counts for violation of the Minnesota Deceptive Trade Practices Act.  *Rainbow Play Sys. v. GroundScape Techs., LLC*, 364 F. Supp. 2d 1026, 1039 (D. Minn. 2005)(citing *Group Health Plan, Inc. v. Philip Morris, Inc.*, 68 F. Supp. 2d 1064, 1069 (D. Minn. 1999)).


   C.      <u>Unfair Competition.</u>   Whether a claim of unfair competition survives a motion to dismiss or motion for summary judgment depends on the resolution of the underlying tort. *See Rehab. Specialists, Inc. v. Koering*, 404 N.W.2d 301, 306 (Minn. Ct. App. 1987) (declining to grant summary judgment on unfair competition claim because of court's decision not to grant summary judgment as to underlying tort); *see also Benfield, Inc., v. Moline*, No. 04-3513, 2006 U.S. Dist. LEXIS 6978, 2006 WL 452903, at *13 (D. Minn Feb. 22, 2006) (concluding that because underlying tort claims had been dismissed, unfair competition claim was dismissed).


        The Complaint should be dismissed pursuant to Rule 12(c) because Plaintiff has failed to plead a facially plausible claim for trademark infringement.    Plaintiff has failed to plead that Defendants have used the allegedly infringing marks in commerce.  The Lanham

Act imposes civil liability on "any person who…without the consent of the registrant..*use[s] in commerce any reproduction*…or colorable imitation of a registered mark." 15 U.S.C. § ```4(1)(a). Emphasis added.

    i. The Lanham Act defines "use in commerce" as follows:

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce:
>
> (1) on goods when:
>
> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>
> (B) the goods are sold or transported in commerce, and
>
>     (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.
>
> A mark shall be deemed to be "abandoned" if either of the following occurs:
>
>     (1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.
>
> (2) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark. Purchaser motivation shall not be a test for determining abandonment under this paragraph.

ii.  An allegedly infringing "use in commerce" is a prerequisite for liability for

trademark infringement.  *See Daimlerchrysler AG v. Bloom*, 315 F.3d 932, 936

(8th Cir. 2003).


iii.  "Use in commerce" encompasses both affixing another's mark to one's own

goods, as well as any use of another's mark to advertise or sell one's own goods

or services.  *Hysitron Inc v. MTS Sys. Corp.*, Civ. No. 07-01533, 2008 U.S. Dist.

LEXIS 58378, *8 (D. Minn. Aug. 1, 2008).


Plaintiff's Complaint is devoid of any alleged facts supporting his pretended trademark infringement Count.[31] Plaintiff must provide at least some alleged facts in his pleadings to color his claim that Defendants have used his marks in commerce.  To have the Lanham Act apply and survive a Fed. R. Civ. P. 12(c) review, Plaintiff must provide some indication that Defendants affixed an allegedly infringing mark to either a good or a service or used Plaintiff' marks to advertise or sell their goods or services. Paragraph 24 of the Complaint is the only thing plead by Plaintiff that might come close to the "use in commerce" requirement under the Lanham Act. But even then, Paragraph 24 merely alleges, without any specific factual information whatsoever, that Defendants "transacted business" using marks owned by Plaintiff.  This is not sufficient to support a claim for trademark infringement. *Dell, Inc. v. This Old Store, Inc.*, Civ. No. H-07-0561, 2007 U.S. Dist. LEXIS 47818, *9-10 (S.D. Tex. July 2, 2007)(finding that a complaint that does not identify any advertisements or other factual basis for the conclusory allegations are inadequate under *Twombly*.)

---

[31]  (Comp. ¶'s 10-35); Kane Depo. at 47, 48, 49).

The fact is that neither Defendant has ever used Plaintiff's marks in commerce or would have reason to do so. Kane is an insurance agent of 34 years and Dietz-Kane is his agency.[32] Kane also owns an electronic data storage business with Plaintiff.  For Plaintiff to assert that Defendants are in the coffee business, and using his marks in the process, is ludicrous. One would think that in order for Plaintiff to even consider making a trademark infringement claim that there must be, somewhere out in commerce, at least one bag of coffee, a single advertisement, a piece of letterhead, an invoice, an inquiring past customer, a Google search, a web-site, etc., linking Defendants to the commission of commerce using Plaintiff's marks.  Of course, Plaintiff can only make the conclusory allegation of trademark infringement, because there are no facts to offer in his pleadings. Neither Defendant has ever attempted to sell a single coffee bean, much less using Plaintiff's alleged marks.[33]

Without any evidence of "use in commerce" there is no viable trademark infringement claim and Plaintiff's claims under this Count should be dismissed under Rule 12(c).

Plaintiff has also failed to plead facts sufficient to show that Defendants' conduct would confuse consumers.  Where an inference of a likelihood of consumer confusion is not plausible from the facts stated in the complaint, such that no reasonable fact finder could find a likelihood of confusion, then dismissal is appropriate.  *Food Scis. Corp. v. Nagler*, Civ. No. 09-1798, 2010 U.S. Dist. LEXIS 112072, *708 (D.N.J. Oct. 20, 2010); *See also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 611 (6th Cir. 2009)("a conclusory and 'formulaic recitation' of the elements of a trademark infringement cause of action is insufficient to survive a motion to dismiss."); *All-U-*

---

[32]  (Kane Depo. at 8).
[33]  (Aff. Kane, ¶ 6); (Kane Depo. at 47-49).

*Need Temp. Servs. v. First Transit, Inc.*, Civ. No. DKC 09-3229, 2010 U.S. Dist. LEXIS 60584, *10-11 (D. Md. June 18, 2010)(citing *Hensley Mfg.*); *Aller-Care, Inc. v. Am. Textile Co.*, Civ. No. 07-4086, 2008 U.S. Dist. LEXIS 76673, *4 (N.D. Ill. Aug. 28, 2008)(finding that where plaintiff only pleads facts to support "an inference of likelihood of confusion" is insufficient under *Twombly*).

As covered in the discussion above, Plaintiff has only claimed that Defendants have "transacted business" under his alleged marks.  Plaintiff has failed to plead that Defendants sell coffee or any goods covered by the marks.  Plaintiff has failed to plead any facts offering the possibility that consumers would be confused under the marks.   Plaintiff has not plead any facts sufficient to show that Defendants intended to confuse consumers.  Therefore, to the extent Plaintiff's claims might rely upon alleged consumer confusion, they should be dismissed for the same reasons as stated above.

Alternatively, the Complaint should be dismissed pursuant to Rule 56 because Plaintiff has no evidence that defendant has infringed any valid trademark owned by Plaintiff.

Defendants have not "used in commerce" any mark owned by Plaintiff.  Defendants have not sold any goods covered by the marks in question.  Defendants have not affixed the allegedly infringing marks to any goods or services related to coffee, tea, or beverages made of coffee.  Defendants have not affixed the allegedly infringing marks to their own services.  Without these earmarks of infringement present, Plaintiff's claims cannot succeed under the law and summary judgment is appropriate.

Plaintiff's only other possibility of maintaining his trademark infringement claim fails because   Defendants' conduct is not likely to confuse ordinary consumers. As a first instance, there is no such conduct to consider.  Second, the websites referenced in the Complaint are no

longer active, and are up for sale.[34]  Consumers can't be confused about what they can't access or see.  Third, while Kane did change the passwords to ArmorCore's account at GoDaddy to protect he and ArmorCore from being associated with Plaintiff's criminal activities and to assist in the criminal investigation of Plaintiff, he did not alter the websites, advertise on the websites, or solicit and/or take orders from the websites.[35] There was, and still is, absolutely no opportunity for or chance of, consumers confusing Kane's insurance services or his insurance agency with any goods associated with Plaintiff's marks.

Therefore, this element of Plaintiff's claim cannot succeed either. Summary judgment on all of Plaintiff's trademark infringement claims is warranted and appropriate.

III.    **PLAINTIFF'S CLAIM FOR COPYRIGHT INFRINGEMENT SHOULD BE DISMISSED.**

A.  Plaintiff's Claim for Copyright Infringement Should Be Dismissed Under Rule 12(c) because the Complaint Fails to Allege Copying by Defendants.

To make a claim for copyright infringement, a plaintiff must prove (1) ownership and validity of the copyright; and (2) violation of the copyright owner's exclusive right by unauthorized reproduction or distribution of the copyrighted work.  *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 830 (8th Cir. 1992).  Defendants have no opinion on the ownership or validity Plaintiff's Works.  Owned and valid or not, Defendants have not copied the Works.[36]

---

[34]  (Kane Depo., Aff. of Okoneski ¶ 3, Exhibit B).
[35]  (Aff. Kane, ¶ 7).
[36]  (Kane Depo. at 42); (Aff. Kane, ¶ 8).

Courts have dismissed copyright infringement cases at the pleadings stage on Rule 12(b)(6) motions, including where the Complaint fails to allege copying.  *See Nelson v. PRN Prods., Inc.* 873 F.2d 1141, 1143-44 (8th Cir. 1989)(finding no substantial similarity between song lyrics); *See also Tegg Corp. v. Backstrom Electric Co.*, 2008 U.S Dist. LEXIS 52184 (W.D. Penn. July 1, 2008)(finding that in light of *Twombly* allegations of ownership and copying of the original works described in said copyright registrations are not sufficient under 12(b)(6)); *Phillips v. Murdock,* 343 F.Supp.2d 1219 (D. Haw. 2008)(dismissing claim for copyright infringement as a matter of law because failure to allege sufficient facts showing Defendants infringed her copyrights by copying original work). This case falls squarely within the Court's ability to dismiss Plaintiff's pretended copyright infringement claim.

Plaintiff's Complaint fails to allege that Defendants have reproduced or distributed any valid copyrighted work owned by Plaintiff.  The complaint fails to include any exhibits which would show copying by Defendants of the Copyright Registrations referenced in the Complaint. The complaint does not even allege copying by the Defendants, but instead merely alleges that Defendants "control and are interfering with the rights and privileges of the Plaintiff in his copyrighted work." But, even if true, "control" and "interference" are not elements of a copyright infringement claim.

The owner of a copyright has the exclusive right to—or to license others to—reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work. *See* 17 U.S.C. 106. "The word "copying" is shorthand for the infringing of any of the copyright owner's five exclusive rights" described in § 106.  *Arista Records LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir.2010) (internal quotation marks and citation omitted).

The deficiency in Plaintiff's copyright claim is that he does not allege, much less supply, any facts to show that Defendant has reproduced, performed, displayed, prepared derivatives of, or distributed any of the copyrighted works.  In these circumstances, a dismissal of the Plaintiff's copyright infringement claim is warranted and appropriate.

As a side note, even if control or interference were part of a copyright infringement analysis, Defendants are not "interfering" with Plaintiff's rights under 17 U.S.C 106. Plaintiff has every ability to publish his Works wherever, whenever, and however he wishes and has the legal right to exclude others from publishing the Works.


B.  Plaintiff's Count for Copyright Infringement Should Be Dismissed Under Rule 56

   Because Defendant Did Not Copy Any Copyrighted Work Owned by Plaintiffs.


Because Plaintiff would bear the burden at trial of demonstrating that Defendants copied his Works, Defendants may satisfy their burden at this stage of the proceedings and under Rule 56 by showing there is no evidence to support an essential element of the nonmoving party's case. *Repp v. Webber*, 132 F.3d 882, 890 (2d Cir.1997)  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). From the above discussion it is clear that Defendants have not copied any of Plaintiff's Works. Neither have Defendants published, distributed, or publicly displayed any of the copyrighted Works referenced in Plaintiff's Complaint.

Courts often dismiss copyright claims on summary judgment where there is no evidence of copying.  *See, e.g., Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Group*, 463 F.3d 478, 483-84 (6th Cir. 2006)(finding lack of copying of legal forms where there was no similarity

between forms); *Sportsman Warehouse, Inc. v. Fair*, 576 F.Supp.2d 1175, 1182 (D. Colo. 2008)(granting summary judgment where there was no direct or indirect evidence of copying);*Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1318-1319 (11th Cir. 2010). Since there is no evidence of copying in the record, summary judgment is warranted and appropriate on Plaintiff's copyright infringement claim.

C.      To the extent that Plaintiff pleads a count for violation of the Visual Artists Rights Act ("VARA") of 1990 (17 U.S.C. § 106A(a)), that count should be dismissed as well under Rule 12(c).

VARA amended the Copyright Act, importing a limited version of the civil-law concept of the "moral rights of the artist" into our intellectual-property law. *Kelley v. Chi. Park Dist.*, 635 F.3d 290, 291 (7th Cir. 2011).  As the 7th Circuit explained:

> For certain types of visual art—paintings, drawings, prints, sculptures, and exhibition photographs—VARA confers upon the artist certain rights of attribution and integrity. The latter include the right of the artist to prevent, during his lifetime,  [*292]  any distortion or modification of his work that would be "prejudicial to his . . . honor or reputation," and to recover for any such intentional distortion or modification undertaken without his consent. See 17 U.S.C. § 106A(a)(3)(A).
> *Id* at 291-292. (emphasis added).

Plaintiff's Works are not works of visual arts – they are copyrights involving text – and therefore, are not subject to the protections of VARA.  Also, there is no allegation or evidence that Defendants have distorted or modified Plaintiff's alleged works.

17

The pleadings and the record are devoid of any facts, alleged facts, or exhibits of "copying" of Plaintiff's Works by either Defendant.  Under these circumstances, dismissal under Rule 12(c) is warranted and appropriate.  In the alternative, since there is no evidence in the record of "copying" this Count is ripe for summary judgment as well.

## IV.  PLAINTIFF'S CLAIM FOR CONVERSION SHOULD BE DISMISSED.

A.  Plaintiff's Claim for Conversion Should Be Dismissed Because It Is Preempted by the Copyright Act and/or the Lanham Act.

The Copyright Act preempts a conversion claim if a plaintiff only alleges unlawful retention of its intellectual property rights and not the unlawful retention of the tangible object embodying its work.  *U.S. ex rel Berge v. Bd. of Trustees*, 104 F.3d 1453, 1463 (4th Cir. 1997); *See also LTVN Holdings, LLC v. Oden*, 2010 U.S. Dist. LEXIS 63164, *18 (D. Md. 2010)(allegedly copying and displaying plaintiff's videos, defendants did not take any tangible property from the plaintiff); *Doody v. Penguin Group (USA) Inc.*, 673 F.Supp.2d 1144, 1164 (D. Haw. 2009)(finding that "conversion actions seeking only damages for the reproduction of the property – not return of tangible property – are preempted by the Copyright Act."); *Coyne's & Co. v. Enesco, LLC*, 565 F.Supp.2d 1027 (D. Minn. 2008)(dismissing a state law claim for conversion preempted by the Copyright Act where the plaintiff failed to prove the extra element that the defendant unlawfully retained the physical object embodying the plaintiff's work."

Plaintiff only alleges that Defendants "took wrongful control over Plaintiff's intellectual property"[37] but failed to allege that defendants took control of the tangible property.  The intellectual property referenced in the Complaint (i.e., the copyrights and trademarks) are not tangible property.   Defendants could not have possibly taken "control" of the publication of the copyrighted Works because they cannot control or interfere with Plaintiff's rights to prevent others from copying the works, or control or interfere with Plaintiff's right to license others to copy the work.  Defendants do not "control" the use of the alleged marks or interfere with Defendant's "on-line coffee business".

B.  Plaintiff's Claim for Conversion Should Be Dismissed Because The Domain Names are the Property of  ArmorCore.

 Conversion occurs where one willfully interferes with the personal property of another without lawful justification, thereby depriving the lawful possessor of use and possession of the property. *Williamson v. Prasciounas*, 661 N.W.2d 645, 649 (Minn. App. 2003).  The elements of common law conversion are (1) the plaintiff has a property interest and (2) the defendant deprives the plaintiff of that interest. *Olson v. Moorhead Country Club*, 568 N.W.2d 871, 872 (Minn. Ct. App. 1997). It is elementary that to maintain a suit for conversion the plaintiff must have had a right to possession of the property superior to that of the alleged converter.  *United States v. Currituck Grain*, 6 F.3d 200, 205 (4th Cir. 1993)

The domain names are not the personal property of Plaintiff because the names are the property of ArmorCore.  It was Plaintiff (not Defendants) who arranged for his domain

---

[37]  (Comp. ¶ 54).

names to be purchased by ArmorCore when he used the ArmorCore Amex Card to do so.

Regardless of whether Plaintiff's placing the domain names

 in ArmorCore's account at GoDaddy was with misappropriated company funds, or with or

without authorization, the fact is that they are now contained within ArmorCore's web-

hosting-agreement with GoDaddy.   Kane is an equal member with Plaintiff in ArmorCore.

Kane has just as much right to administer ArmorCore's account at GoDaddy as does

Plaintiff.  Under no circumstance can Plaintiff be said to have a right superior to that of Kane

when it comes to corporate property. Even GoDaddy recognized this fact when its corporate

counsel determined that because the domain names were purchased by ArmorCore, Kane had

every right to become administrator of ArmorCore's account.[38]

To further emphasize that this case is really a member vs. member business dispute and

not actually about intellectual property rights, the Court is asked to take notice that GoDaddy

has "locked" up ArmorCore's web-hosting account until these members decide

which should have administrator's rights for ArmorCore.[39] In other words, GoDaddy knows

a business dispute when it sees one.[40]

---

[38]  (Kane Ans. to Interrog., No 9(b)).
[39]  (Kane Depo. at 36, 37); (Kane Ans. to Interrog., No 9(b)).
[40]  It is also Defendants' understanding that when Plaintiff sued Defendants and GoDaddy in the predecessor case to this one in New York, Plaintiff sought recovery of his domain names and damages from GoDaddy.  GoDaddy maintained that Plaintiff had no jurisdiction over it in New York (just as Defendants did). It is believed that Plaintiff gave GoDaddy an indefinite extension of time to answer in that case and that Plaintiff still has claims against it, not for copyright and trademark infringement, but because GoDaddy assisted Kane in his capacity as a member of ArmorCore to become administrator of the web-hosting account. All of this only underscores Defendants' position that this is a business dispute not an IP dispute.  Defendants hope to have time to research the status of the New York case prior to the hearing of this motion in case the Court has any questions regarding same.

C.  Plaintiff's Claim For Conversion Should Be Dismissed Because Even If The Domain
   Names Can Be Considered As Transferred to Kane Any Such Transfer Was Made  With
   Lawful Justification.

Where possession is held through proper legal channels, a claim for conversion will not

lie. *See Naegle Outdoor Adver., Inc. v. Minneapolis Cmty. Dev. Agency*, 551 N.W.2d 235,

238 (Minn. Ct. App. 1996); *see also Balasuriya v. Bemel*, 617 N.W.2d 596, 601 (Minn. Ct.

App. 2000).  Kane knows now, but did not know at the time, that when he became

administrator of ArmorCore's web-hosting account at GoDaddy, GoDaddy automatically

listed him as the registered owner of the domain names, just as Plaintiff was listed as

registered owner when he placed the domain names in the account.[41]  Plaintiff makes much

of this artificial designation of Kane as "registered owner" by GoDaddy.  But, in reality,

GoDaddy's internal policy cannot be construed as Kane claiming to be the owner of

Plaintiff's marks.

In any case, in order to become administrator of this ArmorCore owned account, Kane

went through GoDaddy's processes and channels as laid out in GoDaddy's web-hosting contract

with ArmorCore.  And GoDaddy kept Plaintiff fully informed of the process.[42]

More important to Kane's liberty, Kane had every legal right and justification to become

ArmorCore's administrator, even if it meant that Plaintiff's domain names residing therein

would not be useful to Plaintiff for some time. As stated earlier, because Plaintiff used the assets

and identity of ArmorCore to further his illegal activities, because Plaintiff implicated

---

[41]  Plaintiff misrepresents GoDaddy's policy of listing the named administrator as the owner, as
proof that Kane was trying to "steal" Plaintiffs domain names. Plaintiff even swore out a
criminal complaint against Kane with the St. Paul Police Department.
[42]  (Kane Ans. to Interrog., No. 9(b)).

Defendants in his illegal activities, and because Kane was defending himself and assisting the United States in its investigation leading to the indictment of Plaintiff, Kane was justified in becoming administrator of the ArmorCore account even if it happened to change the identity of the registrant.  Under these circumstances no claim for conversion should be allowed to stand.


## **CONCLUSION**

Plaintiff has contrived these trademark and copyright claims against his business partner for his own nefarious reasons, which have nothing to do with the law of intellectual property.

Trademark, deceptive trade practices, and unfair competition claims require a defendant to have  used a plaintiff's marks in commerce.  It is not enough to merely plead a conclusion that these Defendants have used Plaintiff's marks in commerce.  Plaintiff must allege plausible facts to support his conclusive allegations However, Plaintiff's Complaint has not provided the Court a single instance or factual allegation of "use in commerce". Likewise, the Complaint contains no plausible facts that could lead a trier of fact to conclude, or even consider, that any consumer has been confused between Defendant's insurance business and Plaintiff's alleged coffee business.  Under this lack of facts, Plaintiff's trademark and related claims should be dismissed on the pleadings pursuant to Fed. R. Civ. P. 12(c).   In the alternative, these claims of Plaintiff are ripe for summary judgment under Fed. R. Civ. P. 56.

It seems axiomatic that copyright claims must offer some proof of copying and this is what case law has established. Nevertheless, Plaintiff has not plead a single fact or produced even one exhibit to the Court tending to show that Defendants have copied any of his alleged Works.  Courts routinely dismiss copyright infringement cases at the pleadings stage on Rule

12(b)(6) motions, especially when a Complaint fails to provide the Court any alleged facts to consider.  Plaintiff's copyright claims should be dismissed on the pleadings.   In the alternative, these claims of Plaintiff are ripe for summary judgment under Fed. R. Civ. P. 56.

Plaintiff's claims for conversion are ineffective for at least three reasons.  First, state law conversion claims are preempted by the Copyright Act where only damages are sought, and not the return of Plaintiff's ability to license other to copy his Works, or prevent others from doing so. Plaintiff's right to allow others to copy his Works remains intact, even if he cannot access his domain names administered by his own company (ArmorCore) or because GoDaddy has "locked" him out of administering the ArmorCore web-hosting account.   Second, Plaintiff's alleged Works are no longer his personal property, because they are contained within domain names that are the property of ArmorCore.  Plaintiff, himself, caused the domain names to become the property of ArmorCore!  Kane has as much right as Plaintiff to be in charge of ArmorCore's web-hosting account at GoDaddy.  Plaintiff must have a property right superior to Kane in order to claim that Kane has converted his domain names, and his Works residing therein. Plaintiff and Kane are co-owners of ArmorCore and thus, Plaintiff does not have such a superior right in this case.  Third, a claim for conversion will not lie where possession is held through legal channels.  In this case, Kane followed all of GoDaddy's contractual requirements to become administrator of ArmorCore's account. GoDaddy disallowed Plaintiff's objections to Kane becoming administrator, even under threat of suit by Plaintiff.  Kane was also justified in becoming the administrator of ArmorCore's account at GoDaddy to distance himself and ArmorCore from Plaintiff's illegal activities and assist the United States in its investigation of Plaintiff's illegal rebate activities.  Based upon the foregoing, Plaintiff's conversion claim should

be dismissed on the pleadings because they are preempted by the Copyright Act or as a matter of law under Fed. R. Civ. P 56.

In summary, Plaintiff has not plead facts sufficient for his trademark, copyright, and conversion claims to proceed to trial.  Plaintiff's claims against Defendants should be dismissed on the pleadings, or in the alternative, by way of summary judgment.

Respectfully submitted,

This 19th day of September, 2011.

*Thomas J. Okoneski*

Thomas J. Okoneski (# 146791)
Okoneski Law Firm LLC
P.O. Box 9069
North St. Paul, MN  55109
Telephone: (651) 260-3524
E-mail: okolaw@q.com

ATTORNEY FOR DEFENDANTS