Thomas Kane                                                    August 18, 2011

**1**

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

-------------------------------------------

Chaim Lowenstein,

              Plaintiff,

      vs.        No.10-CV-02857-SRN-AJB

Tom Kane, Junior;
and Deitz-Kane and Associates
Insurance Agency, Inc.,

              Defendants.

-------------------------------------------

        The Deposition of THOMAS KANE, JR.,
taken pursuant to Notice of Taking
Deposition, taken before Vicki A. Gardner, a
Notary Public in and for the County of
Ramsey, State of Minnesota, taken on August
18, 2011, at 701 4th Avenue South,
Minneapolis, Minnesota, commencing at
approximately 9:00 a.m.

**2**

1  APPEARANCES:
2
3  ON BEHALF OF THE PLAINTIFF:
        Paul Godfread
4       100 South Fifth Street
        Suite 1900
        Minneapolis, Minnesota 55402
5
6
7  ON BEHALF OF THE DEFENDANT:
        Thomas Okoneski
        2223 Ariel Street North
8       Maplewood, Minnesota 55109
9
   Also present was Peter Nikolai.
10
11
              ***
12
              INDEX
14    DEPOSITION OF THOMAS KANE, JR.
15
16
   Examination:         Page
17 Mr. Godfread          3
18
   Exhibits:
19 1, 2 and 3            3
20
21
22
23
24
25

**3**

1              P R O C E E D I N G S
2   (Deposition Exhibit Numbers 1, 2 and 3 were
3   marked for identification.)
4              THOMAS KANE,
5   called as a witness, being first duly sworn,
6        was examined and testified as follows:
7                  * * *
8              EXAMINATION
9                  * * *
10  BY MR. GODFREAD:
11  Q.  All right, Mr. Kane. I'm Paul Godfread. I
12      know we have already met. I am the attorney
13      for Mr. Lowenstein, the plaintiff in the
14      matter. Have you done a deposition before or
15      been deposed before?
16  A.  One time in my life, yeah.
17  Q.  Okay. Well, the only thing I'm going to ask
18      is that you speak slowly and clearly so
19      everything can be transcribed. Wait until
20      I'm done with the question before answering
21      just to make sure everything can be recorded
22      clearly.
23  A.  Very good.
24          MR. GODFREAD: Okay. Any
25  stipulations that anyone is wanting to put on

**4**

1   the record ahead of time?
2          MR. OKONESKI: Paul, I would just
3   say at the outset that we are here under the
4   understanding that Tom Kane is being deposed.
5          MR. GODFREAD: Yes.
6          MR. OKONESKI: And he happened to
7   be the principal of another defendant, but
8   that defendant is not being deposed.
9          So if inquiries start to get into
10  the Dietz-Kane side of things, we are going
11  to have to object to that. So I don't know
12  -- I didn't see anything on your list that
13  looked like the Dietz-Kane defendant might be
14  inquired about today.
15          But that would be a separate
16  deposition. A separate notice and so forth.
17  So just so we are on the record before we get
18  started just on that subject matter, that's
19  the only thing of clarification I need at
20  this time, I think.
21          MR. GODFREAD: All right. And I
22  have given you each a copy of three different
23  exhibits that will be used today, just to ask
24  questions about them.
25          I know Exhibit 1 should be your



Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

Thomas Kane                                                    August 18, 2011

5

1    answers to interrogatories and you answered
2    on behalf of yourself and on behalf of
3    Dietz-Kane Insurance.  But I think that for
4    the most part I will be able to just use
5    answers on behalf of Kane himself for this
6    deposition.
7            MR. OKONESKI:  Okay.  Well, there
8    aren't any answers from Dietz-Kane in here
9    because those were separate, correct?
10           MR. GODFREAD:  Actually, this
11   exhibit included both.  But, like I said, I
12   think we can -- we should be able to limit
13   questions to his answers for his own --
14           MR. OKONESKI:  Okay.
15           MR. GODFREAD:  On behalf of
16   himself.
17           MR. OKONESKI:  I think in here we
18   generally objected to Dietz-Kane's questions.
19   We might have answered anyhow subject to
20   those objections.  But Dietz-Kane doesn't
21   have separate interrogatories to it.
22           Do we need to mark this as an
23   exhibit?
24           MR. GODFREAD:  I have already given
25   her copies.

6

1            MR. OKONESKI:  Okay, thanks.
2            MR. GODFREAD:  Exhibit 2 is a "who
3    is."  I just printed that out.  I believe
4    it's the same one I sent to you but it's
5    merely for illustration as an email.
6            I believe you have seen this as
7    part of the New York action.
8            MR. OKONESKI:  Okay.  Well, you can
9    lay the foundation with Mr. Kane.
10           MR. GODFREAD:  Sure.  I just wanted
11   to make sure you had a copy of each.
12   BY MR. GODFREAD:
13   Q.  Mr. Kane, just a little bit of background.
14   Have you ever been a witness in a legal
15   proceeding?
16   A.  No, I have not.
17   Q.  Have you ever been, other than this lawsuit
18   or New York one before it, have you been a
19   party in a lawsuit?
20   A.  Not against me, no.
21   Q.  Not as a defendant, you mean?
22   A.  Right.
23   Q.  Have you been a plaintiff in a lawsuit?
24   A.  Yes.
25   Q.  What was the nature of that lawsuit?

7

1    A.  I had stucco on my home that I experienced
2    water intrusion.  So it was with a
3    contractor.
4    Q.  Okay.  Have you ever been convicted of a
5    felony?
6    A.  No.
7    Q.  Have you ever been convicted of a crime
8    involving deceit or dishonesty?
9    A.  Never.
10   Q.  Some of the facts at issue in this case are
11   sort of technical.  How would you describe
12   your technical background, technical
13   knowledge?
14           MR. OKONESKI:  I am going to object
15   to that as far too broad.  Can you narrow it
16   to an industry?  Thank you.
17   BY MR. GODFREAD:
18   Q.  As to internet domain names, what would you
19   say your knowledge of internet or domain
20   names is?
21   A.  Not very much, no.
22   Q.  Like how much?
23   A.  Well, not very much.  I'm not an IT person,
24   if that's what you are asking me.
25   Q.  Sure.  Okay.  Let's move onto your

8

1    relationship with Mr. Lowenstein.  Before we
2    get to that, what was your business
3    background?
4    A.  Through my entire career?
5    Q.  Maybe just some highlights.  Right now, you
6    have an insurance agency?
7    A.  Yes, I do.
8    Q.  What did you do before that?
9    A.  I have done insurance for about 34 years.
10   There was a period of time where I ran
11   another company with a partner and we did
12   book publication and things of that nature.
13   Q.  Have you had any side businesses while
14   running the insurance company?
15   A.  I'm not sure I know what you mean by a side
16   business.
17   Q.  Business dealings other than insurance?
18   A.  I just explained that I had another company.
19   Q.  During the time you said 30-some years of working
20   in the insurance business, have you had any
21   other business dealings that weren't
22   insurance business?
23   A.  I am not sure I understand the question.
24   Q.  Well, for example, like -- it's fairly
25   straightforward.  Other than insurance, did

Toll Free: 866.646.0618
Facsimile: 612.332.4233



ESQUIRE
an Alexander Gallo Company

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                         August 18, 2011

9

1    you have even a part-time business or
2    anything like that?
3    A.  As I told you, I had another company that I
4    worked in with a partner and I did that for
5    20 years simultaneously to my insurance
6    business.
7    Q.  Okay.  What was that?  What did that business
8    involve?
9    A.  We had books published each year.
10   Q.  That's the book publishing one.  I
11   misunderstood your answer.
12   A.  I'm sorry.
13   Q.  No problem.  How long have you known Mr.
14   Lowenstein?
15   A.  You know, I'm really sorry I can't give an
16   exact date on that but I would say that we
17   were working together for about two years, I
18   think, and I maybe knew him a year before
19   that.
20        But I couldn't give an exact date
21   without going back to look up certain
22   records.
23   Q.  Is that two years from today or when?
24   A.  No, not from today.  So, I want to say that
25   maybe it was around 2005 or 4.  I can't say

10

1    for sure.
2        But we engaged in a business
3    together called Armor Core Technologies.
4    Q.  That was the first you had any kind of
5    interaction you had with Lowenstein was Armor
6    Core?
7    A.  No.
8    Q.  What was before Armor Core?
9    A.  I was helping out a company called -- I can't
10   remember the name of the company.  But it was
11   a company I had independently invested in
12   that they were looking to bring their data
13   recovery product to market.
14        And I kind of came aboard without
15   being paid or anything like that, but to help
16   them get the product out into the sales
17   channel.  And that was when I met Lowenstein.
18   Q.  For this business, would you say your role
19   was primarily an investigator or were you
20   doing some work with this business?
21   A.  As I said, I was helping them without
22   monetarily being compensated to bring that
23   product to market.
24        So I attended a couple of IT shows,
25   trade shows.  That is where I met Lowenstein.

11

1    An I, on behalf of that company, pursued him
2    due to the size of his company and so forth
3    to have them entertain the idea of bringing
4    this product to market with the computers
5    that they produced.
6    Q.  When you met Lowenstein, you reached out to
7    him at that time or you sought him out, is
8    that fair to say?
9    A.  Sure.
10   Q.  And then maybe a year after that is when you
11   started working together on Armor Core?
12   A.  I don't know if it was exactly a year.  But
13   what ended up happening was things broke down
14   between the CEO of the company that owned the
15   product that I was trying to help out.
16        And, when I say broke down, what I
17   mean by that is Lowenstein had samples of the
18   product that they were going to be doing
19   testing and ultimately nothing was happening.
20        So that CEO had requested for
21   Lowenstein to send the stuff back.  At that
22   stage of the game, Lowenstein had expressed
23   his disappointment, et cetera, et cetera.
24   But we had continued conversations about the
25   entire idea and principle behind data

12

1    recovery and so forth.
2        Do you want me to go into more
3    detail on that?
4    Q.  Maybe a little more detail on how -- I mean,
5    if you had been running the insurance company
6    and didn't have technical background, how did
7    you find this data recovery product and how
8    were you intending -- that may be a multiple
9    question.
10        How did you find this data recovery
11   product in the first place?
12   A.  It was introduced to me as an investment
13   opportunity.
14   Q.  And how were you intending to take it to
15   market without -- as you said, you don't have
16   technical or IT background.  What was your
17   proposal to bring it to market?
18   A.  To simply open the doors.  What I was being
19   referred to as was the gate keeper.
20   Q.  If you could turn your attention now to
21   Exhibit 1.  Have you seen this document
22   before?
23   A.  Yes, I have.
24   Q.  The answers within it are answers that you
25   provided.



ESQUIRE
an Alexander Gallo Company

Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                        August 18, 2011

13

1  A.  I would say yes.  I signed the document.
2  Q.  They are your answers for each of the
3      interrogatories?
4  A.  Sure.
5  Q.  Interrogatory one involves identifying people
6      with knowledge about the allegations or
7      claims in this lawsuit.  And you listed Maria
8      Albright, U.S. postal inspector.  When did
9      you first meet Maria Albright?
10 A.  I don't have the actual date, but I believe
11     it was in July of 2008.  She and another
12     federal person came into my office.
13 Q.  So they came to you, you didn't go to them?
14 A.  That's correct.
15 Q.  When they came to your office, what were they
16     there for?  Did they say?
17 A.  Yeah, they were going to arrest me.
18 Q.  Did they say what for?
19 A.  Well, initially, they had a bunch of file
20     folders that they were interrogating me on,
21     assuming that I was a person involved in some
22     legal matters.
23 Q.  The legal matters relate to this case?
24 A.  Are you referring to the -- when you say
25     "this case" are you talking about --

14

1  Q.  Lowenstein versus Kane, District of
2      Minnesota.
3          MR. OKONESKI:  Well, I'm going to
4      object to that.  Counsel knows exactly what
5      claims are involved in this.
6          MR. GODFREAD:  I do.  I don't
7      understand how --
8          MR. OKONESKI:  Just let me finish,
9      Paul, then you can have your chance.
10         And you are asking a layman for
11     legal conclusions.  But I will also tell Mr.
12     Kane that if you will ask the question again,
13     you can try to answer the question.  Okay?
14     We have the objection on the record.
15 BY MR. GODFREAD:
16 Q.  All right.  What do you believe Maria
17     Albright knows about this that would relate
18     to this case, the Lowenstein v Kane?
19 A.  All she would know at this point is that
20     Lowenstein had placed a suit against me
21     regarding the domains.
22 Q.  Was it roughly 2008, she had contacted you.
23     How frequently did you communicate after
24     that?
25         MR. OKONESKI:  I'm going to object.

15

1  That calls for speculation but go ahead and
2  try to do what you can as far as your recall
3  allows.
4  A.  They were at my office for three days.  After
5      they left, I was given the assignment, if you
6      will, to provide them additional -- all of
7      what I could, which I always just wanted to
8      cooperate with them.
9          You know, it became clear to me --
10     just for the record -- during those three
11     days, things that I had suspected and was
12     trying to determine on my own, I was very
13     close to ultimately figuring out what was
14     going on.
15         And I wanted to do nothing but
16     cooperate with them to clear myself from any
17     illegal activities.
18 BY MR. GODFREAD:
19 Q.  What had you suspected?
20 A.  I suspected that there was fraud taking place
21     by Lowenstein.
22 Q.  Why did you suspect that?
23 A.  Well, for a number of reasons.  Specifically,
24     my suspicions came about in November of 2007
25     when he wanted me to bring additional

16

1  investors into our company.
2      I had agreed to that.  However, I
3  insisted that at that stage of the game I get
4  books for the company to see what was going
5  on.  He had always taken care of all those
6  duties.
7      The books could not be produced.
8  We were several months into excuses as to why
9  they couldn't be produced.  Ultimately, when
10 they were produced, it lacked in many areas.
11     And in the month of February --
12 Tom, should I -- excuse me.  Should I just
13 give him these details right now?
14     MR. OKONESKI:  Well, it's a long
15 narrative and typically we don't like these
16 long narratives.  But I think you should
17 probably go ahead and get the basics on the
18 table and we'll let Mr. Godfread take it
19 further if he wants.
20 A.  Sure.  So in February of '08, I received a
21     phone call from a company that went on to
22     tell me that one of our company checks had
23     been attempted to be cashed, although they
24     felt that they caught the person.
25         And I had no idea what they were

Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

Thomas Kane                                    August 18, 2011

17

1    talking about.  But it led me to go back to
2    previous conversations that I had with
3    Lowenstein, which all had to do with checks
4    he was having sent to the office that he
5    needed to have forwarded back to New York.
6          These were what he referred to as
7    rebate checks for his web company.
8          MR. OKONESKI:  I'm sorry, excuse
9    me.  What was the name of the company?  Do
10   you know.
11         THE WITNESS:  Web Commerce.  Or Web
12   Com 247.
13         MR. OKONESKI:  Thanks.
14   A.  At that point in time, I called that company
15   back.  I took their name and phone number,
16   after I had a conversation with Lowenstein
17   because he told me that I had nothing to
18   worry about there and blah, blah, blah.
19         I just simply wasn't going to
20   accept all the excuses anymore.  I wanted our
21   attorney involved, which ultimately we did
22   get our attorney involved.
23   BY MR. GODFREAD:
24   Q.  Was that Mr. Okoneski or a different
25   attorney?

18

1    A.  No, it was the attorney that worked for the
2    company that Lowenstein and I were engaged
3    in.
4    Q.  Who was that?
5    A.  Her name was Patricia.  I forget the last
6    name but I can certainly --
7    Q.  Okay.
8    A.  It's all there.
9    Q.  Just wanted to clarify.
10   A.  Sure.  So at that stage of the game, that's
11   when things really started to escalate where
12   there was an awful lot of dishonesty and
13   deception and lack of trust now on my part
14   with him.
15   Q.  Sure.
16   A.  So.
17   Q.  Okay.  And any of these rebate checks were
18   getting mailed to St. Paul or New York or
19   where were they getting mailed to or from?
20   A.  St. Paul.  That's where my office is.
21   Q.  Did you cash any of these checks?
22   A.  Never.
23   Q.  Or deposit them in Armor Core accounts?
24   A.  No.
25   Q.  The person you listed on interrogatory one is

19

1    Vic LeLauries.  Am I saying that right?
2    A.  DeLauries.
3    Q.  How long have you known Vic?
4    A.  I would say I have known Vic for about ten
5    years.
6    Q.  Has he been an employee of Dietz-Kane or any
7    other companies that you have owned or worked
8    for?
9    A.  No.
10   Q.  Has he been like a contractor for Dietz-Kane?
11         MR. OKONESKI:  I'm going to object
12   to that question.  If you want to depose
13   Dietz-Kane, you have got to get them in here,
14   Paul.
15         MR. GODFREAD:  You placed this on
16   his own answer.  Maybe I'll ask more
17   generally.
18   BY MR. GODFREAD:
19   Q.  In what capacity do you know Vic?
20   A.  He is an IT person.
21   Q.  And you have hired him for IT-related
22   services?
23   A.  Not for me personally.  But he has done work
24   for my insurance agency in the past.
25   Q.  What kind of work, would you say?

20

1    A.  Well, in my business we have computers and
2    occasionally we become infected or a computer
3    could have some malfunction.
4          Also, from a website standpoint, he
5    develops websites.  Things of that nature.
6    Q.  I believe in interrogatory 2 you mention some
7    of what -- I will give you a second to look
8    at that.
9          Vic DeLauries has knowledge of
10   plaintiff creating emails purportedly from
11   Kane to various parties but that were
12   actually sent by Plaintiff.
13         What emails are you referring to
14   there?
15   A.  Well, so, not too long after the postal
16   inspectors had been in my office I received a
17   phone call from one of the vendors that we
18   had used within Armor Core.
19         I had not spoken to this vendor for
20   sometime.  In fact, I had not spoken to any
21   of our vendors for months at that point in
22   time because I was disengaged for the company
23   to move forward.
24         In that phone call he asked me if
25   everything was okay and I said, well, not



ESQUIRE
an Alexander Gallo Company

Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                                        August 18, 2011

21

1    really.  He said, "I wondered," he said,
2    "because I received the craziest email that I
3    thought you would want to know about."  I
4    said, "Okay.  What's that?"
5         And so he sent the email to me of
6    which in that particular email it was
7    preposterous.  It laid out that my insurance
8    business was going to take over this coffee
9    company and so forth.
10        I had gone back to -- immediately
11   once I got ahold of that, I sent that off to
12   the postal inspector letting her know how I
13   viewed what was going on there and it looked
14   like he was trying to set me up for
15   something.
16        She had informed me that you can
17   always determine where emails are originated
18   from.
19   Q.  Who is she?
20   A.  Maria Albright.
21   Q.  Okay.
22   A.  And I said okay.  And so I went back to my IT
23   person, Vic, and he said as long as we get it
24   in its original format and I got that from
25   the vendor and sent that off to Vic.

22

1         And he in turn showed me how you
2    determine where emails are generated from.
3    And it turned out to be an IP address in New
4    York.
5         So I felt fairly comfortable at
6    that point in that if this ever came up again
7    that I could certainly -- anyone that has
8    knowledge in that world would be able to
9    prove out that I had nothing to do with
10   anything of that at all.
11   Q.  Sure.  Do you ever travel to New York?
12   A.  I think I was in New York one time in my life
13   in the mid '80s.  That was for the other
14   publishing company.  I was in and out the
15   same day.
16   Q.  Never since then?
17   A.  No.
18   Q.  Okay.  Also on interrogatory 2 for yourself,
19   this would be listed as Page 5 in Exhibit 1,
20   lists the complaint of the United States of
21   America verses Lowenstein as, I guess, having
22   facts relating to this case.
23        In what way does that case relate
24   to this one?
25        MR. OKONESKI:  I'm going to object

23

1    to that.  It calls for a legal conclusion.
2    But you can go ahead and try to answer if you
3    can, Tom.
4    A.  I'm not sure I understand the question.  So
5    if you could ask that again.
6    BY MR. GODFREAD:
7    Q.  Well, you listed it as a document you have
8    that would have facts relevant to this case.
9    What facts are in that complaint?
10        MR. OKONESKI:  Just a moment, Tom.
11   If you can't recall, that's perfectly
12   acceptable.  If you want to review the
13   complaint that Mr. Godfread is talking about,
14   that's a reasonable request at a deposition.
15        If you feel you need to review the
16   complaint so you can refresh your
17   recollection on what facts are actually
18   contained in there, you are entitled to do
19   that.  Otherwise, you don't have to guess.
20        I don't know if we have one here
21   at the deposition.  Do we, Paul?
22        MR. GODFREAD:  I don't have one
23   printed up but I could get one printed up.
24   Maybe I will ask a little narrower question.
25

24

1    BY MR. GODFREAD:
2    Q.  Are there any facts in that complaint that
3    you recall that would relate to this case?
4    A.  And so, I just want to be clear, Paul.
5    Q.  Yeah.
6    A.  Are you asking me the allegations made
7    against me by Lowenstein, how they relate to
8    the postal matter?
9    Q.  Well, your answer was to the question in this
10   interrogatory was what documents might you
11   have that would have facts relevant to this
12   case.
13        And you answered complaint of U.S.
14   v Lowenstein.  And I guess I am asking why
15   specifically, what facts did you think were
16   in that complaint that were relevant to this
17   case?
18   A.  Okay.  So, I think I understand the question.
19   My answer to that would be I was fully
20   cooperating with the postal inspector's
21   office.  And in doing so, I made copies of
22   everything that had to do between Lowenstein
23   and myself, which included from the time that
24   the Armor Core website area was under my
25   control.



ESQUIRE
an Alexander Gallo Company

Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                      August 18, 2011

25

1     They then knew of everything, all
2  the correspondence that was going on between
3  Lowenstein and myself which had to do with my
4  attempts to get his items back to him once I
5  learned of those, which also had to do
6  with -- just so that the paper trail would
7  always be there, knowing that I was always up
8  front and honest with everybody from day one.
9     So, to answer your question more
10  specifically, everything was copied and
11  provided to them.
12  Q.  Okay.  Turn to your answer to interrogatory
13  number 6 which is on Page 9.  No, sorry.  I
14  don't believe that's correct.
15     Sometime during the postal service
16  investigation, is it true you became the
17  administrator of some of the domain names
18  that had been owned by Lowenstein?
19  A.  Actually, from a timing perspective, I
20  believe that I had just taken over the Armor
21  Core stuff with Go Daddy, I want to say
22  within days before they walked into my
23  office.
24  Q.  So this would be like Armor Core -- I'm
25  making this up -- Armor Core dot com, if that

26

1  was the domain name.  It would be something
2  relating to the Armor Core name?
3  A.  Correct.
4  Q.  Did you also become the domain administrator
5  for Coffee 247 dot com?
6  A.  Okay, so here is what I would answer to that
7  due to how things occurred.  Armor Core
8  Technologies had an account with Go Daddy.
9  This was on a Friday, Paul, that I had made
10  -- there were many things that led up to
11  this.
12     But I had wanted to understand more
13  about what was going on behind the scenes
14  within Armor Core, which was controlled
15  always by Lowenstein.
16     I discovered there may be a way
17  that I could get into the Armor Core website
18  and emails and all this stuff through the
19  help of Vic and made an effort to get in
20  there.
21     And the way in which we were able
22  to go in there relates to other things that
23  had led up to that, which was my
24  understanding of a credit card being used to
25  pay for things by Lowenstein.

27

1     Because I didn't have the user name
2  and password to get into Armor Core, Go Daddy
3  was willing to provide it to me if I could
4  answer a few questions, one of which was the
5  last four digits of this credit card, which
6  was under my name.
7     And they, in turn, allowed me into
8  that -- I'm not sure what you call that.
9  Okay.  But at that point, I could control the
10  Armor Core stuff.
11  Q.  Okay.
12  A.  And I'm not an IT person, but what I did
13  ultimately learn is that the way that gets
14  set up was that Armor Core was the
15  administrator and underneath all that there
16  were a bunch of different domain names.
17     Why they were there, I have no idea
18  because they had nothing to do with Armor
19  Core.  But they were there.
20     The fact is, in order to retain the
21  Armor Core stuff in talking with the people
22  at Go Daddy, I needed to change the password
23  and these items.  And we did that.
24     By the following Monday, I had
25  received a phone call from the local police

28

1  department questioning me as to being a cyber
2  criminal.  I gave them a brief description of
3  what had occurred.
4  Q.  Which police department is this?
5  A.  The St. Paul Police Department.  And I, in
6  turn -- which by the way there is a separate
7  division within the St. Paul
8  Department about cyber criminal.
9  Q.  Okay.
10  A.  I, in turn, contacted Lowenstein to find out
11  what he had done to create such drama.  And
12  at that stage of the game, what had happened
13  was due to all the efforts made on his part,
14  the Go Daddy folks locked everything down.
15     So I could not get into it, he
16  could not get into it, nothing.
17  Q.  You said you first -- this was Friday when
18  you had first gone to Go Daddy?
19  A.  It was on a Friday.
20  Q.  By Monday, St. Paul police had contacted you
21  about potential cyber crime issues?
22  A.  Correct.
23  Q.  And you had mentioned you made the decision
24  to do something about the domain names before
25  the postal inspector contacted you.  Is that



Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                                August 18, 2011

29

1  correct?
2  A.  Say that again.
3  Q.  I think earlier -- maybe I am wrong, maybe I
4     misheard -- you said that you made the
5     decision to do something about the Armor Core
6     domains even before the postal service had
7     contacted you?
8  A.  Everything I just explained to you happened
9     before that --
10        MR. OKONESKI:  Just a second, Tom.
11        My recollection is you asked him or
12     he volunteered the information that because
13     of suspicious business activity related to
14     Lowenstein and Armor Corp Technologies, Mr.
15     Kane wanted to investigate what was going on.
16        Part of the investigation included
17     trying to figure out -- he wanted to get into
18     the emails and he wanted to look and see what
19     was happening with the Armor Core website.
20     He is a members of Armor Corp.  He is
21     entitled to do that at least.
22        So his answer was that he was
23     trying to investigate Lowenstein's --
24        MR. GODFREAD:  I'm just clarifying
25     the time frame.

30

1        MR. OKONESKI:  I know.  I'm just
2     telling you what you just asked my client was
3     actually an accusation, which was that you
4     decided you were going to do something about
5     the domain names at that time and his answer
6     was -- the inference is that he had made up
7     his mind he was going to take control of
8     those domain names.
9        But his actual answer was, all he
10     wanted to do was investigate and see what was
11     going on in there.  So not intentionally, but
12     I think you are putting words in my client's
13     mouth.
14        MR. GODFREAD:  Is that an
15     objection?
16        MR. OKONESKI:  Yes.
17     BY MR. GODFREAD:
18  Q.  All right.  So maybe I can find a better way.
19     Your decision to investigate the domains,
20     that decision happened before you had been
21     contacted by the postal service?
22  A.  When you say "domains," you are saying
23     plural.  My decision to find out what was
24     going on with Armor Core was prior to the
25     postal people coming in.

31

1  Q.  Your dealings with Go Daddy, that was also
2     before the postal service contacted you?
3     Maybe I will be more specific.
4        You had mentioned you logged in.
5     You were able to control Armor Core and
6     whatever other domains were in the same
7     account.
8        That was before postal service
9     contacted you, as well?
10  A.  Yes.
11  Q.  Had you made an attempt to see if it was
12     possible to administer just the domain names
13     that related to Armor Corp or names that
14     sounded like Armor Corp and looked like Armor
15     Core?
16  A.  Yes.
17  Q.  Was that possible?
18  A.  Well, there were several things that were
19     happening simultaneously.  I had a
20     conversation with Go Daddy.  While they were
21     on the phone with me, they were explaining to
22     me how to move certain domains from the Armor
23     Core stuff to a different domain.
24        We spent about, I would say, an
25     hour or so on the phone trying to make that

32

1  happen but the stuff didn't move over for
2  some reason.
3        But then simultaneously throughout
4  this period of time or this time frame, I had
5  been in communications with Lowenstein to
6  allow him to be able to get back into the
7  site.
8        But I had reservations because I
9  didn't want to release the Armor Core stuff
10  that was there.  But, do keep in mind that
11  there was a period of time -- again, without
12  going back to look at emails, there was a
13  period of time where everything was locked
14  down so neither myself or Lowenstein could
15  get into that area.
16        As a result of that, ultimately the
17  Go Daddy folks did their investigation and
18  ultimately released everything back to me
19  and I suspect that's because on their due
20  diligence they probably discovered that the
21  things were actually on a credit card of mine
22  with my name.  It's my guess.
23        However, that took some time.  I
24  can't remember how many weeks.  But I believe
25  it was during that time frame with things

Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com



ESQUIRE
an Alexander Gallo Company

Thomas Kane                                    August 18, 2011

33

1   being locked down that the postal folks came
2   in.
3          And again I would need to double
4   check that record.  But I think that would be
5   pretty accurate.  Which means I couldn't
6   share that with them at that point when they
7   were in my office.
8   Q.  Couldn't share what exactly?
9   A.  I couldn't share with them the Armor Core
10  email stuff or any of that because I didn't
11  have access to it yet.
12  Q.  Okay.
13  A.  I hadn't taken time.  I hadn't -- none of
14  that.
15  Q.  Right.  Was it your intention in transferring
16  to yourself the domain names -- what was your
17  intention in doing that?
18         MR. OKONESKI:  Well, just a second.
19  Objection.  It's another accusation, Paul.  I
20  mean, I don't think you did it intentionally,
21  but what Mr. Kane said was he became the
22  administrator.
23         And what you have just said to him
24  is when you took control of -- or you
25  transferred the domain names to Kane himself.

34

1   Those are two different concepts.
2          MR. GODFREAD:  How so?
3          MR. OKONESKI:  Transferring domain
4   names is you are trying to take title to
5   these things and own them.  He just wants to
6   be the administrator.
7          MR. GODFREAD:  Is there a technical
8   difference you would like to put on the
9   record between being the administrator of the
10  domain name and being the owner of the domain
11  name?
12         MR. OKONESKI:  Yes.  If you are
13  going to ask about -- he has testified he
14  became the administrator.  He never said that
15  he transferred title to those domain names to
16  himself.  So we can keep that distinction.
17         MR. GODFREAD:  I'm just not sure
18  what the distinction is in the context of a
19  domain name.
20  A.  Then you should check with Go Daddy.  They
21  did it.  Not me.
22  BY MR. GODFREAD:
23  Q.  You believe there is a distinction between
24  being the administrator of a domain name and
25  being the owner of a domain name?

35

1          MR. OKONESKI:  Objection.  It calls
2   for a legal conclusion.  You can tell him
3   what you think.
4   A.  Yeah, I would guess there is a big
5   difference.
6   BY MR. GODFREAD:
7   Q.  Okay.  Maybe now is as good a time as any to
8   turn to Exhibit 2.  Exhibit 2 is the Go Daddy
9   report.
10  A.  I show it as number 3.
11         MR. OKONESKI:  I might have mis-
12  marked it, too, Paul.
13  BY MR. GODFREAD:
14  Q.  I have it as 2.  But just for the record, we
15  are looking at the one with Go Daddy dot com
16  on the top.  Web screen shot printout.  Have
17  you seen this before?
18  A.  No, I have not.
19  Q.  Have you seen something similar to this
20  before?
21  A.  No.
22  Q.  This was something I printed from Go Daddy
23  and I believe I mailed a copy of this to your
24  attorney.  But as you can see, it shows your
25  name, Tom Kane, as the registrant

36

1   administrative contact and technical contact
2   for 247 coffee dot com.
3          Do you believe that is accurate?
4   A.  No.
5   Q.  In what way do you believe it is inaccurate?
6   A.  From my standpoint, the registrant for Armor
7   Core is what I had done.
8   Q.  Meaning what?
9   A.  Meaning when I was able to get into the Go
10  Daddy website area for Armor Core, my name
11  had to be on there in a different password in
12  order to lock Lowenstein out.
13  Q.  Was it your intention to lock Lowenstein out
14  from, let's say, 247 coffee dot com?
15  A.  Of course not.
16  Q.  Was it your intention to lock him out from
17  domain names relating to Armor Core?  By that
18  I mean any domain name that would have Armor
19  Core, something similar in the name?
20  A.  For Armor Core, yes.
21  Q.  Okay.  But not for any other domain names?
22  A.  Of course not.
23  Q.  Did you know that that might be the effect of
24  the changes you had made with Go Daddy?
25  A.  No, I did not.



Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                                    August 18, 2011

37

1    Q.  But since then, you know that has been the
2         effect, is that true?
3    A.  No, because no one can have access to it.
4         When Lowenstein placed his first suit,
5         Go Daddy locked everything down.  So they
6         have owned it all since.  It's out of my
7         hands.
8    Q.  So it's your -- basically, I'm paraphrasing,
9         you are saying Go Daddy owns 247 coffee dot
10        com?
11   A.  I say that --
12             MR. OKONESKI:  I'm going to object,
13        Tom.  It calls for a legal conclusion.  So
14        that's on the record.
15             But you can try to answer the
16        question.
17   A.  Paul, I do not know how Go Daddy does their
18        business.  I don't understand how the domain
19        stuff all goes down.
20             I have never opened one on my own.
21        I paid people to do that stuff.  I don't
22        understand the technical part of it at all.
23        BY MR. GODFREAD:
24   Q.  Okay.
25   A.  But if you are asking me at one point was I

38

1         aware that those other domains sat under the
2         Armor Core name, yes, and I made all kinds of
3         attempts to get those back into Lowenstein's
4         hands.
5    Q.  What kind of attempts?
6    A.  If he didn't produce the emails to you, then
7         I guess at some point we could produce them.
8             There were many attempts to -- I
9         had even wanted to give him a password at one
10        point in time for what was the area where the
11        things didn't really transfer over to.
12             Again, it was all fruitless
13        attempts when you have someone on the other
14        end that wants to make it look like he is a
15        victim of something and he is doing
16        everything in his power to not cooperate to
17        get things resolved.
18             And coincidentally, throughout that
19        whole process, I had been making every effort
20        possible to just get away from this
21        individual with the whole Armor Core deal.
22             And there is all kinds of emails
23        that will show that.  And things kept
24        unfolding at the end which that's why it
25        always led me to say what is going on here?

39

1    I just want out.
2    Q.  Did you list any of those emails in your
3         answer to interrogatory 2 as documents that
4         would relate to this case?
5             MR. OKONESKI:  Paul, I'm going to
6         object to that question on the basis that the
7         interrogatories speak for themselves.  If you
8         will take a look at paragraph 6 on Page 6.
9             MR. GODFREAD:  Yes.
10            MR. OKONESKI:  You will note that
11        other than the above listed documents, I have
12        said there are many, many documents in my
13        office that relate to this case.
14            You were invited to come over,
15        review those documents, copy them at your
16        leisure, and you haven't taken the -- I was
17        going to say the time, but that's not very
18        kind.
19            You haven't taken the opportunity
20        yet to do that and I wouldn't expect that Mr.
21        Kane is going to remember any details on
22        probably what amounts to 300 or 400
23        documents.
24        BY MR. GODFREAD:
25   Q.  All right.  But the emails you refer to just

40

1    recently, there is no reference to those in
2    this interrogatory.  That's true.  In your
3    answer to this interrogatory?
4    A.  I think it is referenced here.  There is all
5         kinds of documents.  I mean, am I the
6         defendant here?  Or am I the plaintiff?  Do
7         you want me to -- what do you want me to do?
8         What would you like from me?
9             MR. OKONESKI:  No, Tom.  Just a
10        second.  You don't get to ask questions.
11        Just go ahead.
12            If you don't understand a question,
13        if you don't want to answer it, just say so.
14        But you don't need to ask questions.
15   A.  I don't understand the question and I think
16        that it's been answered in these documents
17        and I think my attorney has also given you
18        the permission to go and look at other
19        things.
20        BY MR. GODFREAD:
21   Q.  Sure.  Have you stated that part of your
22        intent in becoming the administrator of the
23        websites was to preserve evidence?  Is that a
24        fair statement?
25   A.  Yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                           August 18, 2011

41

1  Q.  What kind of evidence did you want to
2      preserve?
3  A.  All of the emails and email addresses that
4      were set up in the account Lowenstein had
5      control of.
6          And once I was able to get in
7      there, I could see everything that he had and
8      was doing.  And I wanted to preserve that.
9  Q.  You were able to preserve this evidence by
10     transferring the administrative rights to the
11     domains?
12 A.  By being able to change the password and so
13     forth for him to get in there, yes.
14 Q.  Did that necessarily involve transferring the
15     domain?  Not just changing the password,
16     sorry, but did that necessary involve
17     transferring or changing the administrative
18     contact information for all of the domains?
19 A.  Well, there is only one area that you change
20     things in.  And, again, I'm going by memory.
21     When my IT guy was in there, it was just
22     about changing up my name and confirming the
23     credit card information and the password.
24         And as I mentioned before, if you
25     were to go into a Go Daddy -- which that was

42

1      the only time I was ever in there -- that
2      part of it, you would see that it's one block
3      of information that gets answered as I am
4      attempting to control the Armor Core piece.
5          And then anything that's underneath
6      the Armor Core stuff, I imagine that that
7      change applied to all.  Guessing.
8  Q.  You said you were attempting to preserve
9      evidence.  While doing that, did you make
10     copies of any of these emails?
11 A.  Oh, yeah.
12 Q.  How about the websites that were posted or
13     that these domains resolved to?
14 A.  No.
15 Q.  Didn't make any copies of the websites?
16 A.  No.
17 Q.  Let's take a look at Exhibit 3.  The emails
18     is what I have as Exhibit 3.  Have you seen
19     this document before?
20 A.  I think I did, yes.
21 Q.  When did you see it?
22 A.  When the suit was originally brought forward
23     in the State of New York against me.  I
24     believe this document was produced to me.
25 Q.  But before that, you had never seen that?

43

1  A.  No.
2  Q.  The email, would possibly appear to be from
3      you but are you saying you did not write that
4      email?
5  A.  That's correct.
6  Q.  Earlier, you had said you had worked with Vic
7      in determining whether you could find out the
8      source of the email.  Was this one of the
9      emails you had looked at to see if you could
10     determine the source of the email?
11 A.  No.
12 Q.  Were there other emails that were like this
13     in subject?
14 A.  No.
15 Q.  Is the email address Tom at Armor 247 dot com
16     one that you have used?
17 A.  Yeah.  I mean, when we had the Armor Core
18     Technology business, I think there was an
19     email set up under that name for me, yes.
20         I want to verify that, but I think
21     so.
22 Q.  Subject to verification.  If you later say
23     no, it was something Tom K at -- all right.
24     You believe it was an email you used?
25 A.  Tom at Armor 247?

44

1  Q.  Right.
2  A.  Yes.
3  Q.  So the email reads -- I don't know if you
4      want to read it -- but in the email there is
5      a second line before the signature:  You can
6      start by paying me $5,000 money order.  Send
7      it to Dietz-Kane Insurance, 674 6th Street
8      East, St. Paul, Minnesota 55106.
9          Now, you have already said you
10     didn't write this email.  Have you ever made
11     a similar demand of Lowenstein?
12 A.  The only thing I would answer to that --
13     again, I would want to refer back to emails,
14     but we had email exchanges going to try and
15     dilute the company, to determine who would
16     take the company and who wouldn't.
17         Would the number $5,000 be in there
18     somewhere?  Maybe.  I don't know.  But, you
19     know, clearly, this is a cut and paste thing
20     because it's different -- if you can't see
21     that with the naked eye, I don't know what to
22     tell you there, Paul.
23 Q.  How do you know it's a cut and paste?
24 A.  You can see the type face is different.  There
25     is one type face.  (Indicating).  There



Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

Thomas Kane                                        August 18, 2011

45

1    another type face.
2    Q.  Okay.  But I mean, can you confirm it wasn't
3        just a different type face used within the
4        email?
5    A.  Well, I would imagine I can't.  I can only go
6        by what I see with the naked eye.
7    Q.  You don't know that it was cut and paste.
8        It's just your suspicion based on the fact
9        that there is two different type faces?
10   A.  No.  It would be my suspicion based on the
11       behavior of your client.
12   Q.  Such as if you are saying his behavior, why
13       would you say that he would make up a phony
14       email?
15   A.  Because, as I told you before, I had received
16       an original email from an old vendor that
17       proved out that it came from Lowenstein
18       himself.
19   Q.  As to that email, how would you say that was
20       proved out?
21   A.  I explained earlier that if you have an
22       original email, there is a header to it,
23       okay?  And in that header, it shows the IP
24       address where it was produced from.
25            Now, this isn't an original.  This

46

1        is a copy, of course.  So you probably have
2        an original somewhere that you could go and
3        investigate that.
4    Q.  Okay.  But you don't currently have an
5        original of this email?
6    A.  Of course not.  I have never seen this email
7        other than when it was produced to me by the
8        attorney in New York, which was used as
9        evidence in the State of New York.
10   Q.  But it appears to come from Armor 247 dot com
11       domain and it's dated August 17, 2008.
12            Who was, by August 17, 2008, were
13       you the administrator of Armor 247 dot com?
14   A.  I would have to go back and look at that.
15       But, I guess to answer your question in
16       short, I did not produce that document.  The
17       only time I ever saw that document was when
18       it was shown to me by the attorney.
19            And that's all I can tell you on
20       that, Paul.
21   Q.  You didn't have someone else produce it on
22       your behalf?
23   A.  Of course not.
24   Q.  Okay.  And you are not sure if by August 17th
25       you were the administrator of Armor 247 dot

47

1        com?
2    A.  I'm going to guess that it was the case only
3        because of the timing when the postal
4        inspector people came in.  But what I would
5        also add to that, I believe that was the time
6        frame that I had already been instructed by
7        the federal folks to not communicate with
8        Lowenstein any longer.
9    Q.  You had not communicated with Lowenstein
10       after getting that instruction?
11   A.  That's correct.
12   Q.  Not by email?
13   A.  Not by any manner.
14   Q.  Not by phone?
15   A.  No.
16   Q.  Have you ever sent an e-mail suggesting that
17       you were the owner of 247 Coffee, the name
18       247 Coffee?
19   A.  I'm going to say no.
20   Q.  How about the domain name 247 Coffee dot com?
21   A.  Well, again, no.
22   Q.  With the same question as to Brewlee?
23   A.  No.
24   Q.  Same as to 247 Java?
25   A.  No.

48

1    Q.  Okay.  Just confirming.
2    A.  Sure.
3    Q.  Have you ever printed any materials with
4        those names?
5    A.  Never.
6    Q.  Or had someone print materials?
7    A.  Never.
8    Q.  Created any websites using those names?
9    A.  No.
10   Q.  Social media accounts, like Facebook?
11   A.  No.
12   Q.  But other than Go Daddy, no one else you have
13       indicated that you were the rightful owner --
14       maybe I will ask it separately because I know
15       you are making a distinction.  Rightful owner
16       of those domain names?
17   A.  I have never claimed to own those names.
18   Q.  Have you made any claims that you were the
19       rightful administrator of those names?
20   A.  No.
21   Q.  Has anyone asked you if you or Dietz-Kane --
22       I know you are going to object -- has anyone
23       asked you if you were affiliated with 247
24       Coffee?
25            MR. OKONESKI:  I will object on



Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                        August 18, 2011

49

1    behalf of the Dietz-Kane, but you can answer
2    on behalf of yourself.
3  A.  No.
4    BY MR. GODFREAD:
5  Q.  Same for Brewlee?
6  A.  Correct.
7  Q.  Have you ever used or spoken -- let's say
8    start real broad.  Have you ever spoken those
9    names over the phone?
10  A.  No, I have not.
11  Q.  When did you first register the Dietz-Kane
12    dot com domain?
13  A.  Actually, that's a great question.  Vic
14    DeLauriers and Chaim Lowenstein who I knew as
15    Chaim, who I now understand it's a different
16    name -- actually coordinated efforts to build
17    the website for Dietz-Kane insurance of which
18    I paid for to Lowenstein for his efforts to
19    do that for me.
20  Q.  Okay.  When was that?
21  A.  I can't be a hundred percent accurate, but
22    I'm going to say it was sometime in 2007.
23  Q.  Okay.  Dietz-Kane has always been
24    administered by yourself?  I should say
25    Dietz-Kane dot com, the domain name?

50

1  A.  I have never actually been into the
2    Dietz-Kane -- behind the scene website stuff.
3    I would have to revert that question to Vic,
4    my IT guy, to understand how that's really
5    set up.
6  Q.  Vic has probably taken care of most of
7    Dietz-Kane dot com --
8  A.  That's correct.
9  Q.  -- technical matters, let's say?
10  A.  I think so.  But when it was built, it was
11    built by Lowenstein under the direction of
12    Vic because it was Lowenstein's desire to
13    want to learn how to do that stuff.
14  Q.  Learn how to build websites?
15  A.  Correct.
16  Q.  When you took administrative control let's
17    say of the Armor Core and related domain
18    names, did you contact Lowenstein to tell him
19    that you had done that?
20  A.  Well, obviously on that following Monday
21    because I was dealing with the St. Paul
22    Police Department.
23  Q.  So on Monday you contacted Lowenstein?
24  A.  Yes.
25  Q.  How did you contact him?

51

1  A.  Originally, more than likely by telephone.
2    And if I wouldn't have been successful there
3    it would have been by emails and so forth.
4  Q.  Do you remember roughly what you said?
5  A.  Yeah, the whole deal had already been blown
6    out of proportion and the folks at Go Daddy
7    locked everything down at that stage.
8    I explained to him the damage that
9    he had done to now that everything was locked
10    down, they said that it would take two to
11    four weeks for their investigation and blah,
12    blah, blah.
13    And that he had smeared my name
14    because I got the police calling me.  I
15    wanted my name cleared with the Go Daddy
16    folks that I wasn't a cyber criminal.
17    And they deserved an explanation
18    for all what he created on Sunday to make
19    that happen for Monday.
20  Q.  What did you tell Go Daddy then about the
21    transfer?
22  A.  That's not the way it works, Paul.  You don't
23    get to tell Go Daddy.  You don't get to talk
24    to them.
25  Q.  Tell me how it works.

52

1  A.  I had to send them an email to explain my
2    position, which I did.
3  Q.  What was your position?  How did you explain
4    your position?
5  A.  That there was a dispute between my partner
6    and I with our Record Technologies and that I
7    felt that a reasonable amount of time, things
8    could get straightened out but have to do
9    your thing and we'll do our thing.
10  Q.  So you basically told them it was a business
11    dispute?
12  A.  With Armor Core Technologies.
13  Q.  Right.
14  A.  It was more than just a dispute, I think at
15    that point I told them there was questionable
16    activities within our business that I was
17    trying to understand.
18    The email is there somewhere.  In
19    fact, that's with the postal people, too.
20  Q.  The St. Paul police, had you contacted the
21    St. Paul police or had someone else contacted
22    the St. Paul police?
23  A.  Lowenstein had contacted the St. Paul police
24    of which they in turn responded back to me.
25  Q.  So on Monday, St. Paul police had known about



Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                        August 18, 2011

53
1    this and it was after St. Paul police had
2    contacted you that you contacted Lowenstein?
3  A.  Correct.
4  Q.  So if you contacted Lowenstein, you are
5    assuming he already knew something about the
6    domain names, something being changed about
7    the domain names?
8  A.  He lodged the complaint.
9  Q.  Had you filed any complaints of your own
10    before that Monday when the St. Paul police
11    was there?
12  A.  No.
13  Q.  When was the most recent time you talked to
14    Maria Albright?
15  A.  I'm not sure what you mean by that.
16  Q.  Most recently.
17  A.  Just about two weeks ago.
18  Q.  What was that conversation about?
19  A.  Well, in that conversation, I let her know
20    that I was now being forced to go to a
21    deposition, which is absolutely insane.
22        I was informed, as I had been in
23    the past, that this would be a separate
24    matter that I would need to handle directly
25    with Lowenstein and all that.

54
1        But that she had her hands full
2    because he now had a different understanding
3    of his guilty pleading for his criminal
4    activities.
5  Q.  Did you say anything to you about this
6    deposition?
7  A.  No.
8  Q.  Is there anyone else in the New York matter
9    that you have been in contact with, talking
10    to you about this case?
11        MR. OKONESKI:  Excuse me, Paul.
12    Are you talking about the --
13        BY MR. GODFREAD:
14  Q.  The U.S. v Lowenstein matter.
15        MR. OKONESKI:  Okay, thank you.
16  A.  No.
17        BY MR. GODFREAD:
18  Q.  The U.S. attorneys, you have not been in
19    contact with them?
20  A.  No.
21  Q.  And they have not been in contact with you?
22  A.  No.
23  Q.  Nor Mr. Lowenstein's attorney in that case,
24    they have not contacted you, to your
25    knowledge?

55
1  A.  No.  There are public records on what had
2    occurred out there though.  And I was curious
3    to know what was going on.
4  Q.  So you read at least public records?
5  A.  I saw the guilty plea on his part.
6  Q.  Where did you see that?
7  A.  Where did I see that?
8  Q.  Yeah.
9  A.  I contacted the courthouse and got a copy of
10    it.
11  Q.  But, I mean, you must have heard of it by
12    then to have decided to contact the
13    courthouse?
14  A.  Paul, I was always very interested in what
15    was going on because, quite frankly, I was
16    told that they were going to take care of
17    this matter within a couple of weeks after
18    they left my office.
19        This matter that has taken place
20    out in the State of New York against me and
21    this state should have never occurred and the
22    fact of the matter is that had they reacted
23    as quickly as they said they were going to --
24  Q.  Who is "they"?
25  A.  -- there would never have been an opportunity

56
1    for Lowenstein to lodge such allegations
2    against me.
3  Q.  Who is "they"?
4  A.  Because it was never the intention.  "They"
5    would be the folks from the federal postal
6    inspector's office.
7        MR. GODFREAD:  Okay.  I think we
8    are coming to the end.  I just want to make
9    sure I'm not missing anything.
10        All right.  I think that's it.
11    Thank you very much.
12        MR. OKONESKI:  Just a second.  Mr.
13    Kane, we have the opportunity -- your counsel
14    has the opportunity to ask you some questions
15    if we wish to do that.  Off the record.
16        (Discussion held off the record.)
17        (A short break was taken.)
18        MR. OKONESKI:  Back on the record.
19    Thank you for the break, Paul.  We don't have
20    any further questions of Mr. Kane at this
21    time.
22        Are you ready to close, Paul?
23        MR. GODFREAD:  That's it.  Thank
24    you for coming here and submitting to the
25    questions.  Did you want to sign or waive



ESQUIRE
an Alexander Gallo Company

Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                          August 18, 2011

57

1 signature?  How do you want to do that?
2      MR. OKONESKI:  No, we'll do the
3 read and sign, please.
4      That just means we have a chance to
5 read the transcript and make sure everything
6 is recorded correctly.  And sometimes you can
7 make some clarifications and things like
8 that.  You might want to check for spellings
9 and things.
10      THE WITNESS:  Okay.
11      (The deposition concluded at 10:30 a.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

58

1      DEPOSITION ERRATA SHEET
   Our Assignment No. 262990
2  Case Caption: LOWENSTEIN
        vs.
3      KANE-DEITZ
4    DECLARATION UNDER PENALTY OF PERJURY
     I declare under penalty of perjury
5  that I have read the entire transcript of
   my Deposition taken in the captioned matter
6  or the same has been read to me, and
   the same is true and accurate, save and
7  except for changes and/or corrections, if
   any, as indicated by me on the DEPOSITION
8  ERRATA SHEET hereof, with the understanding
   that I offer these changes as if still under
9  oath.
   Signed on the ____ day of _____, 2011.
10
11      THOMAS KANE, JR.
12
13
14    DEPOSITION ERRATA SHEET
15 Page No._____Line No.___Change
16 to:_____
   _____
17 Reason for change:_____
   _____
18 Page No._____Line No.___Change
19 to:_____
   _____
20 Reason for change_____
   _____
21 Page No._____Line No.___Change
22 to:_____
   _____
23 Reason for change_____
   _____
24 Page No._____Line No.___Change
   to:_____
25 Reason for change:_____
   _____

59

1
2  Page No._____Line No.___Change
   to:_____
3  _____
   Reason for change:_____
4  _____
   Page No._____Line No.___Change
5  to:_____
   _____
6  Reason for change:_____
   _____
7  Page No._____Line No.___Change
   to:_____
8  _____
   Reason for change:_____
9  _____
   Page No. _____Line No.___Change
10 to:_____
   _____
11 Page No. ___Line No.___Change
   to:_____
12 _____
13
14
        SIGNATURE:_____
15
        THOMAS KANE, JR.
16
17      DATE:_____
18
19
20
21
22
23
24
25

60

1  STATE OF MINNESOTA )
2
   COUNTY OF RAMSEY  )
3
4      Be it known that I took the
   deposition of THOMAS KANE, Junior, on August
5  18, 2011;
6      That I was then and there a
   notary public in and for the County of
7  Ramsey, State of Minnesota, and that by
   virtue thereof I was duly authorized to
8  administer an oath;
9      That the witness before
   testifying was by me first duly sworn to
10 testify the whole truth and nothing but the
   truth relative to said cause;
11
      That the testimony of said
12 witness was recorded in stenotype by myself
   and transcribed into typewriting under my
13 direction, and that the deposition is a true
   record of the testimony given by the witness
14 to the best of my ability;
15      That I am not related to any of
   the parties hereto nor interested in the
16 outcome of the action;
17      That the reading and signing by
   the witness and Notice of Filing were not
18 waived;
19
      Witness my hand and seal this 22nd
20 day of August, 2011.
21
22      _____
        Vicki A. Gardner
23      COURT REPORTER
24
25



Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                      August 18, 2011
                                                              61

---

**A**

a.m
57:11

ability
60:14

able
5:4,12 22:8
26:21 31:5
32:6 36:9
41:6,9,12

aboard
10:14

absolutely
53:21

accept
17:20

acceptable
23:12

access
33:11 37:3

account
26:8 31:7
41:4

accounts
18:23 48:10

accurate
33:5 36:3
49:21 58:6

accusation
30:3 33:19

action
6:7 60:16

activities
15:17 52:16
54:4

activity
29:13

actual
13:10 30:9

add

47:5

additional
15:6,25

address
22:3 43:15
45:24

addresses
41:3

administer
31:12 60:8

administered
49:24

administrative
36:1 41:10,17
50:16

administrator
25:17 26:4
27:15 33:22
34:6,9,14,24
40:22 46:13,
25 48:19

affiliated
48:23

Agency
1:7 8:6 19:24

ago
53:17

agreed
16:2

ahead
4:1 15:1
16:17 23:2
40:11

ahold
21:11

Albright
13:8,9 14:17
21:20 53:14

allegations
13:6 24:6

56:1

allow
32:6

allowed
27:7

allows
15:3

already
3:12 5:24
44:9 47:6
51:5 53:5

Also
2:9 14:11
20:4 22:18
25:5 26:4
31:1 40:17
47:5

although
16:23

always
15:7 16:5
21:17 25:7
26:15 38:25
49:23 55:14

America
22:21

amount
52:7

amounts
39:22

and/or
58:7

another
4:7 8:11,18
9:3 13:11
33:19 45:1

answer
9:11 14:13
19:16 23:2
24:9,19 25:9,
12 26:6 27:4
29:22 30:5,9

37:15 39:3
40:3,13 44:12
46:15 49:1

answered
5:1,19 24:13
40:16 42:3

answering
3:20

answers
5:1,5,8,13
12:24 13:2

anymore
17:20

appear
43:2

APPEARANCES
2:1

appears
46:10

applied
42:7

approximately
1:19

area
24:24 32:15
36:10 38:10
41:19

areas
16:10

Ariel
2:7

Armor
10:3,5,8
11:11 18:23
20:18 24:24
25:20,24,25
26:2,7,14,17
27:2,10,14,
18,21 29:5,
14,19,20
30:24 31:5,

13,14,22 32:9
33:9 36:6,10,
17,18,20
38:2,21 42:4,
6 43:15,17,25
46:10,13,25
50:17 52:12

around
9:25

arrest
13:17

asked
20:24 29:11
30:2 48:21,23

asking
7:24 14:10
24:6,14 37:25

assignment
15:5 58:1

Associates
1:7

assuming
13:21 53:5

attempt
31:11

attempted
16:23

attempting
42:4,8

attempts
25:4 38:3,5,
8,13

attended
10:24

attention
12:20

attorney
3:12 17:21,
22,25 18:1
35:24 40:17
46:8,18 54:23

attorneys



Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

**August**
1:16 46:11,
12,24 60:4,20

**authorized**
60:7

**Avenue**
1:17

**aware**
38:1

**awful**
18:12

**— B —**

**back**
9:21 11:21
17:1,5,15
21:10,22 25:4
32:6,12,18
38:3 44:13
46:14 52:24
56:18

**background**
6:13 7:12 8:3
12:6,16

**based**
45:8,10

**basically**
37:8 52:10

**basics**
16:17

**basis**
39:6

**becoming**
40:22

**BEHALF**
2:2,6 5:2,5,
15 11:1 46:22
49:1,2

**behavior**
45:11,12

**being**

54:18

3:5 4:4,8
10:15,22
12:18 26:24
28:1 33:1
34:9,10,24,25
41:12 53:6,20

**believe**
6:3,6 13:10
14:16 20:6
25:14,20
32:24 34:23
35:23 36:3,5
42:24 43:24
47:5

**best**
60:14

**better**
30:18

**between**
11:14 24:22
25:2 34:9,23
52:5

**big**
35:4

**bit**
6:13

**blah**
17:18 51:11,
12

**block**
42:2

**blown**
51:5

**book**
8:12 9:10

**books**
9:9 16:4,7

**both**
5:11

**break**
56:17,19

**Brewlee**

47:22 49:5

**brief**
28:2

**bring**
10:12,22
12:17 15:25

**bringing**
11:3

**broad**
7:15 49:8

**broke**
11:13,16

**brought**
42:22

**build**
49:16 50:14

**built**
50:10,11

**bunch**
13:19 27:16

**business**
8:2,16,17,20,
21,22 9:1,6,7
10:2,18,20
20:1 21:8
29:13 37:18
43:18 52:10,
16

**businesses**
8:13

**— C —**

**C**
3:1

**call**
16:21 20:17,
24 27:8,25

**called**
3:5 10:3,9
17:14

**calling**
51:14

**calls**
15:1 23:1
35:1 37:13

**came**
10:14 13:12,
13,15 15:24
22:6 33:1
45:17 47:4

**capacity**
19:19

**Caption**
58:2

**captioned**
58:5

**card**
26:24 27:5
32:21 41:23

**care**
16:5 50:6
55:16

**career**
8:4

**case**
7:10 13:23,25
14:18 22:22,
23 23:8 24:3,
12,17 39:4,13
47:2 54:10,23
58:2

**cash**
18:21

**cashed**
16:23

**caught**
16:24

**cause**
60:10

**CEO**
11:14,20

**certain**
9:21 31:22

**certainly**
18:6 22:7

**cetera**
11:23

**Chaim**
1:3 49:14,15

**chance**
14:9 57:4

**change**
27:22 41:12,
19 42:7
58:17,20,22,
25 59:3,5,8

**changed**
53:6

**changes**
36:24 58:7,8

**changing**
41:15,17,22

**channel**
10:17

**check**
33:4 34:20
57:8

**checks**
16:22 17:3,7
18:17,21

**claimed**
48:17

**claims**
13:7 14:5
48:18

**clarificatio
n**
4:19

**clarificatio
ns**
57:7

**clarify**
18:9



Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

clarifying
29:24

clear
15:9,16 24:4

cleared
51:15

clearly
3:18,22 44:19

client
30:2 45:11

client's
30:12

close
15:13 56:22

coffee
21:8 26:5
36:2,14 37:9
47:17,18,20
48:24

coincidentally
38:18

Com
17:12 25:25
26:5 35:15
36:2,14 37:10
43:15 46:10,
13 47:1,20
49:12,25 50:7

come
39:14 46:10

comfortable
22:5

coming
30:25 56:8,24

commencing
1:18

Commerce
17:11

communicate
14:23 47:7

communicated
47:9

communications
32:5

companies
19:7

company
8:11,14,18
9:3 10:9,10,
11 11:1,2,14
12:5 16:1,4,
21,22 17:7,9,
14 18:2 20:22
21:9 22:14
44:15,16

compensated
10:22

complaint
22:20 23:9,
13,16 24:2,
13,16 53:8

complaints
53:9

computer
20:2

computers
11:4 20:1

concepts
34:1

concluded
57:11

conclusion
23:1 35:2
37:13

conclusions
14:11

confirm
45:2

confirming
41:22 48:1

contact
36:1 41:18
50:18,25
54:9,19,21
55:12

contacted
14:22 28:10,
20,25 29:7
30:21 31:2,9
50:23 52:20,
21,23 53:2,4
54:24 55:9

contained
23:18

context
34:18

continued
11:24

contractor
7:3 19:10

control
24:25 27:9
30:7 31:5
33:24 41:5
42:4 50:16

controlled
26:14

conversation
17:16 31:20
53:18,19

conversations
11:24 17:2

convicted
7:4,7

cooperate
15:8,16 38:16

cooperating
24:20

coordinated
49:16

copied
25:10

copies
5:25 24:21
42:10,15

copy
4:22 6:11
35:23 39:15
46:1 55:9

Core
10:3,6,8
11:11 18:23
20:18 24:24
25:21,24,25
26:2,7,14,17
27:2,10,14,
19,21 29:5,19
30:24 31:5,
14,15,23 32:9
33:9 36:7,10,
17,19,20
38:2,21 42:4,
6 43:17 50:17
52:12

Corp
29:14,20
31:13

correct
5:9 13:14
25:14 26:3
28:22 29:1
43:5 47:11
49:6 50:8,15
53:3

corrections
58:7

correctly
57:6

correspondence
25:2

couldn't
9:20 16:9
33:5,8,9

Counsel

14:4 56:13

County
1:15 60:2,6

couple
10:24 55:17

course
36:15,22
46:1,6,23

COURT
1:1 60:23

courthouse
55:9,13

craziest
21:2

create
28:11

Created
48:8 51:18

creating
20:10

credit
26:24 27:5
32:21 41:23

crime
7:7 28:21

criminal
28:2,8 51:16
54:3

curious
55:2

currently
46:4

cut
44:19,23 45:7

cyber
28:1,8,21
51:16

---
D
---

D
3:1



Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

**Daddy**
25:21 26:8
27:2,22
28:14,18
31:1,20 32:17
34:20 35:8,
15,22 36:10,
24 37:5,9,17
41:25 48:12
51:6,15,20,23

**damage**
51:8

**data**
10:12 11:25
12:7,10

**date**
9:16,20 13:10
59:17

**dated**
46:11

**day**
22:15 25:8
58:9 60:20

**days**
15:4,11 25:22

**deal**
38:21 51:5

**dealing**
50:21

**dealings**
8:17,21 31:1

**deceit**
7:8

**deception**
18:13

**decided**
30:4 55:12

**decision**
28:23 29:5
30:19,20,23

**DECLARATION**
58:4

**declare**
58:4

**DEFENDANT**
2:6 4:7,8,13
6:21 40:6

**Defendants**
1:8

**Deitz-Kane**
1:7

**DeLauriers**
49:14

**DeLauries**
19:2 20:9

**demand**
44:11

**department**
28:1,4,5,8
50:22

**depose**
19:12

**deposed**
3:15 4:4,8

**deposit**
18:23

**Deposition**
1:12,14 2:14
3:2,14 4:16
5:6 23:14,21
53:21 54:6
57:11 58:1,5,
7,14 60:4,13

**describe**
7:11

**description**
28:2

**deserved**
51:17

**desire**
50:12

**detail**
12:3,4

**details**
16:13 39:21

**determine**
15:12 21:17
22:2 43:10
44:15

**determining**
43:7

**develops**
20:5

**didn't**
4:12 12:6
13:13 27:1
32:1,9 33:10
38:6,11 42:15
44:10 46:21

**Dietz-Kane**
4:10,13 5:3,
8,20 19:6,10,
13 44:7 48:21
49:1,11,17,
23,25 50:2,7

**Dietz-Kane's**
5:18

**difference**
34:8 35:5

**different**
4:22 17:24
27:16 31:23
34:1 36:11
44:20,24
45:3,9 49:15
54:2

**digits**
27:5

**diligence**
32:20

**dilute**
44:15

**direction**
50:11 60:13

**directly**

53:24

**disappointme
nt**
11:23

**discovered**
26:16 32:20

**Discussion**
56:16

**disengaged**
20:22

**dishonesty**
7:8 18:12

**dispute**
52:5,11,14

**distinction**
34:16,18,23
48:15

**DISTRICT**
1:1 14:1

**division**
28:7

**document**
12:21 13:1
23:7 42:19,24
46:16,17

**documents**
24:10 39:3,
11,12,15,23
40:5,16

**doesn't**
5:20

**doing**
10:20 11:18
24:21 33:17
38:15 41:8
42:9

**domain**
7:18,19 25:17
26:1,4 27:16
28:24 30:5,8
31:12,23
33:16,25

34:3,10,15,
19,24,25
36:17,18,21
37:18 41:15
46:11 47:20
48:16 49:12,
25 50:17
53:6,7

**domains**
14:21 29:6
30:19,22
31:6,22 38:1
41:11,18
42:13

**doors**
12:18

**dot**
25:25 26:5
35:15 36:2,14
37:9 43:15
46:10,13,25
47:20 49:12,
25 50:7

**double**
33:3

**down**
11:13,16
28:14 32:14
33:1 37:5,19
51:7,10

**drama**
28:11

**due**
11:2 26:7
28:13 32:19

**duly**
3:5 60:7,9

**During**
8:19 15:10
25:15 32:25

**duties**
16:6



Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

---
**E**
---

**E**
3:1

**each**
4:22 6:11 9:9
13:2

**earlier**
29:3 43:6
45:21

**East**
44:8

**effect**
36:23 37:2

**effort**
26:19 38:19

**efforts**
28:13 49:16,
18

**email**
6:5 21:2,5,6
33:10 41:3
43:2,4,8,10,
15,19,24
44:3,4,10,14
45:4,14,16,
19,22 46:5,6
47:12 52:1,18

**e-mail**
47:16

**emails**
20:10,13
21:17 22:2
26:18 29:18
32:12 38:6,22
39:2,25 41:3
42:10,17
43:9,12 44:13
51:3

**employee**
19:6

**end**
38:14,24 56:8

**ended**
11:13

**engaged**
10:2 18:2

**entertain**
11:3

**entire**
8:4 11:25
58:5

**entitled**
23:18 29:21

**ERRATA**
58:1,8,14

**escalate**
18:11

**et**
11:23

**everybody**
25:8

**evidence**
40:23 41:1,9
42:9 46:9

**exact**
9:16,20

**exactly**
11:12 14:4
33:8

**Examination**
2:16 3:8

**examined**
3:6

**example**
8:24

**exchanges**
44:14

**excuse**
16:12 17:8
54:11

**excuses**
16:8 17:20

**Exhibit**
3:2 4:25
5:11,23 6:2
12:21 22:19
35:8 42:17,18

**Exhibits**
2:18 4:23

**expect**
39:20

**experienced**
7:1

**explain**
52:1,3

**explained**
8:18 29:8
45:21 51:8

**explaining**
31:21

**explanation**
51:17

**expressed**
11:22

**eye**
44:21 45:6

---
**F**
---

**face**
44:24,25
45:1,3

**Facebook**
48:10

**faces**
45:9

**fact**
20:20 27:20
45:8 52:19
55:22

**facts**
7:10 22:22
23:8,9,17
24:2,11,15

**fair**

**11:8 40:24**

**fairly**
8:24 22:5

**far**
7:15 15:2

**February**
16:11,20

**federal**
13:12 47:7
56:5

**feel**
23:15

**felony**
7:5

**felt**
16:24 22:5
52:7

**Fifth**
2:3

**figure**
29:17

**figuring**
15:13

**file**
13:19

**filed**
53:9

**Filing**
60:17

**find**
12:7,10 28:10
30:18,23 43:7

**finish**
14:8

**first**
3:5 10:4
12:11 13:9
28:17,18 37:4
49:11 60:9

**folders**
13:20

**folks**
28:14 32:17
33:1 47:7
51:6,16 56:5

**following**
27:24 50:20

**follows**
3:6

**forced**
53:20

**forget**
18:5

**format**
21:24

**forth**
4:16 11:2
12:1 21:9
41:13 51:3

**forward**
20:23 42:22

**forwarded**
17:5

**foundation**
6:9

**four**
27:5 51:11

**frame**
29:25 32:4,25
47:6

**frankly**
55:15

**fraud**
15:20

**frequently**
14:23

**Friday**
26:9 28:17,19

**front**
25:8

**fruitless**
38:12



ESQUIRE
an Alexander Gallo Company

Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                                      August 18, 2011

66

**full**
54:1

**fully**
24:19

**further**
16:19 56:20

———— G ————

**G**
3:1

**game**
11:22 16:3
18:10 28:12

**Gardner**
1:14 60:22

**gate**
12:19

**gave**
28:2

**generally**
5:18 19:17

**generated**
22:2

**getting**
18:18,19
47:10

**give**
9:15,20 16:13
20:7 38:9

**given**
4:22 5:24
15:5 40:17
60:13

**go**
12:2 13:13
15:1 16:17
17:1 23:2
25:21 26:8,22
27:2,22
28:14,18
31:1,20 32:17
34:20 35:8,

15,22 36:9,24
37:5,9,17
40:11,18
41:25 45:5
46:2,14 48:12
51:6,15,20,23
53:20

**Godfread**
2:3,17 3:10,
11,24 4:5,21
5:10,15,24
6:2,10,12
7:17 14:6,15
15:18 16:18
17:23 19:15,
18 23:6,13,22
24:1 29:24
30:14,17
34:2,7,17,22
35:6,13 37:23
39:9,24 40:20
49:4 54:13,17
56:7,23

**goes**
37:19

**going**
3:17 4:10
7:14 9:21
11:18 13:17
14:3,25 15:14
16:4 17:19
19:11 21:8,13
22:25 25:2
26:13 29:15
30:4,7,11,24
32:12 34:13
37:12 38:25
39:5,17,21
41:20 44:14
47:2,19 48:22
49:22 55:3,
15,16,23

**gone**
21:10 28:18

**good**
3:23 35:7

**great**
49:13

**guess**
22:21 23:19
24:14 32:22
35:4 38:7
46:15 47:2

**Guessing**
42:7

**guilty**
54:3 55:5

**guy**
41:21 50:4

———— H ————

**hadn't**
33:13

**hand**
60:19

**handle**
53:24

**hands**
37:7 38:4
54:1

**happen**
32:1 51:19

**happened**
4:6 28:12
29:8 30:20

**happening**
11:13,19
29:19 31:19

**haven't**
39:16,19

**header**
45:22,23

**heard**
55:11

**held**
56:16

**help**
10:15 11:15
26:19

**helping**
10:9,21

**her**
5:25 18:5
21:12 53:19
54:1

**hereof**
58:8

**hereto**
60:15

**highlights**
8:5

**hired**
19:21

**home**
7:1

**honest**
25:8

**hour**
31:25

**hundred**
49:21

———— I ————

**idea**
11:3,25 16:25
27:17

**identificati
on**
3:3

**identifying**
13:5

**illegal**
15:17

**illustration**
6:5

**imagine**
42:6 45:5

**immediately**
21:10

**inaccurate**
36:5

**included**
5:11 24:23
29:16

**independentl
y**
10:11

**INDEX**
2:13

**indicated**
48:13 58:7

**Indicating**
44:25

**individual**
38:21

**industry**
7:16

**infected**
20:2

**inference**
30:6

**information**
29:12 41:18,
23 42:3

**informed**
21:16 53:22

**initially**
13:19

**inquired**
4:14

**inquiries**
4:9

**insane**
53:21

**insisted**
16:3

**inspector**



ESQUIRE
an Alexander Gallo Company

Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                                    August 18, 2011
                                                                           67

13:8 21:12
28:25 47:4
**inspectors**
20:16
**inspector's**
24:20 56:6
**instructed**
47:6
**instruction**
47:10
**Insurance**
1:7 5:3 8:6,
9,14,17,20,
22,25 9:5
12:5 19:24
21:7 44:7
49:17
**intending**
12:8,14
**intent**
40:22
**intention**
33:15,17
36:13,16 56:4
**intentionally**
30:11 33:20
**interaction**
10:5
**interested**
55:14 60:15
**internet**
7:18,19
**IP**
22:3 45:23
**interrogating**
13:20
**interrogatori**
**es**
5:1,21 13:3
39:7
**Interrogatory**
13:5 18:25
20:6 22:18

24:10 25:12
39:3 40:2,3
**introduced**
12:12
**intrusion**
7:2
**invested**
10:11
**investigate**
29:15,23
30:10,19 46:3
**investigation**
25:16 29:16
32:17 51:11
**investigator**
10:19
**investment**
12:12
**investors**
16:1
**invited**
39:14
**involve**
9:8 41:14,16
**involved**
13:21 14:5
17:21,22
**involves**
13:5
**involving**
7:8
**IP**
22:3 45:23
**issue**
7:10
**issues**
28:21
**items**
25:4 27:23
**IT-related**
19:21

――――― J ―――――

**Java**
47:24
**JR**
1:12 2:14
58:11 59:15
**July**
13:11
**Junior**
1:6 60:4
**just**
3:21 4:2,17,
18,23 5:4
6:3,10,13
8:5,18 14:8
15:7,10 16:12
17:19 18:9
23:10 24:4
25:6,20 29:8,
10,24 30:1,2
31:12 33:18,
23 34:5,17
35:14 38:20
39:1,25 40:9,
11,13 41:15,
21 45:3,8
48:1 52:14
53:17 56:8,12
57:4

――――― K ―――――

**K**
43:23
**Kane**
1:6,12 2:14
3:4,11 4:4
5:5 6:9,13
14:1,12,18
20:11 29:15
33:21,25
35:25 39:21
56:13,20
58:11 59:15
60:4

**KANE-DEITZ**
58:3
**keep**
32:10 34:16
**keeper**
12:19
**kept**
38:23
**kind**
10:4,14 19:25
38:5 39:18
41:1
**kinds**
38:2,22 40:5
**knew**
9:18 25:1
49:14 53:5
**know**
3:12 4:11,25
8:15 9:15
11:12 14:19
15:9 17:10
19:19 21:3,12
23:20 30:1
36:23 37:1,17
44:3,18,19,
21,23 45:7
48:14,22
53:19 55:3
**knowing**
25:7
**knowledge**
7:13,19 13:6
20:9 22:8
54:25
**known**
9:13 19:3,4
52:25 60:4
**knows**
14:4,17

――――― L ―――――

**lack**

18:13
**lacked**
16:10
**laid**
21:7
**last**
18:5 27:5
**later**
43:22
**lawsuit**
6:17,19,23,
25 13:7
**lay**
6:9
**layman**
14:10
**learn**
27:13 50:13,
14
**learned**
25:5
**least**
29:21 55:4
**led**
17:1 26:10,23
38:25
**left**
15:5 55:18
**legal**
6:14 13:22,23
14:11 23:1
35:2 37:13
**leisure**
39:16
**LeLauries**
19:1
**Let's**
7:25 36:14
42:17 49:7
50:9,16
**letting**



Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

21:12

**life**
3:16 22:12

**likely**
51:1

**limit**
5:12

**line**
44:5 59:9,10

**list**
4:12 39:2

**listed**
13:7 18:25
22:19 23:7
39:11

**lists**
22:20

**little**
6:13 12:4
23:24

**local**
27:25

**lock**
36:12,13,16

**locked**
28:14 32:13
33:1 37:5
51:7,9

**lodge**
56:1

**lodged**
53:8

**logged**
31:4

**long**
9:13 16:14,16
19:3 20:15
21:23

**longer**
47:8

**look**

9:21 20:7
29:18 32:12
38:14 39:8
40:18 42:17
46:14

**looked**
4:13 21:13
31:14 43:9

**looking**
10:12 35:15

**lot**
18:12

**Lowenstein**
1:3 3:13 8:1
9:14 10:5,17,
25 11:6,17,
21,22 14:1,
18,20 15:21
17:3,16 18:2
22:21 24:7,
14,22 25:3,18
26:15,25
28:10 29:14
32:5,14
36:12,13 37:4
41:4 44:11
45:17 47:8,9
49:14,18
50:11,18,23
52:23 53:2,4,
25 54:14 56:1
58:2

**Lowenstein's**
29:23 38:3
50:12 54:23

─────── **M** ───────

**mailed**
18:18,19
35:23

**making**
25:25 38:19
48:15

**malfunction**

20:3

**manner**
47:13

**Maplewood**
2:8

**Maria**
13:7,9 14:16
21:20 53:14

**mark**
5:22

**marked**
3:3 35:12

**market**
10:13,23 11:4
12:15,17

**materials**
48:3,6

**matter**
3:14 4:18
24:8 53:24
54:8,14
55:17,19,22
58:5

**matters**
13:22,23 50:9

**mean**
6:21 8:15
11:17 12:4
33:20 36:18
40:5 43:17
45:2 53:15
55:11

**Meaning**
36:8,9

**means**
33:5 57:4

**media**
48:10

**meet**
13:9

**members**
29:20

**memory**
41:20

**mention**
20:6

**mentioned**
28:23 31:4
41:24

**merely**
6:5

**met**
3:12 10:17,25
11:6

**mid**
22:13

**mind**
30:7 32:10

**mine**
32:21

**Minneapolis**
1:18 2:4

**MINNESOTA**
1:1,16,18
2:4,8 14:2
44:8 60:1,7

**mis-**
35:11

**misheard**
29:4

**missing**
56:9

**misunderstoo
d**
9:11

**moment**
23:10

**Monday**
27:24 28:20
50:20,23
51:19 52:25
53:10

**monetarily**

10:22

**money**
44:6

**month**
16:11

**months**
16:8 20:21

**most**
5:4 50:6
53:13,16

**mouth**
30:13

**move**
7:25 20:23
31:22 32:1

**multiple**
12:8

**must**
55:11

**myself**
15:16 24:23
25:3 32:14
60:12

─────── **N** ───────

**N**
3:1

**naked**
44:21 45:6

**name**
10:10 17:9,15
18:5,6 26:1,2
27:1,6 32:22
34:10,11,19,
24,25 35:25
36:10,18,19
38:2 41:22
43:19 47:17,
20 49:16,25
51:13,15

**names**
7:18,20 25:17
27:16 28:24



ESQUIRE
an Alexander Gallo Company

Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                                August 18, 2011
                                                                        69

| | | | | |
|---|---|---|---|---|
| 30:5,8 31:12,<br>13 33:16,25<br>34:4,15<br>36:17,21<br>48:4,8,16,17,<br>19 49:9 50:18<br>53:6,7<br><br>**narrative**<br>16:15<br><br>**narratives**<br>16:16<br><br>**narrow**<br>7:15<br><br>**narrower**<br>23:24<br><br>**nature**<br>6:25 8:12<br>20:5<br><br>**necessarily**<br>41:14<br><br>**necessary**<br>41:16<br><br>**need**<br>4:19 5:22<br>23:15 33:3<br>40:14 53:24<br><br>**needed**<br>17:5 27:22<br><br>**neither**<br>32:14<br><br>**Never**<br>7:9 18:22<br>22:16 34:14<br>37:20 42:25<br>46:6 48:5,7,<br>17 50:1<br>55:21,25 56:4<br><br>**New**<br>6:7,18 17:5<br>18:18 22:3,<br>11,12 42:23<br>46:8,9 54:8 | 55:20<br><br>**Nikolai**<br>2:9<br><br>**No.10-CV-<br>02857-SRN-AJB**<br>1:5<br><br>**No.Change**<br>58:15,18,21,<br>23 59:1,4,6,<br>9,10<br><br>**No.Line**<br>58:15,18,21,<br>23 59:1,4,6<br><br>**North**<br>2:7<br><br>**Notary**<br>1:15 60:6<br><br>**note**<br>39:10<br><br>**nothing**<br>11:19 15:15<br>17:17 22:9<br>27:18 28:16<br>60:10<br><br>**Notice**<br>1:13 4:16<br>60:17<br><br>**November**<br>15:24<br><br>**number**<br>15:23 17:15<br>25:13 35:10<br>44:17<br><br>**Numbers**<br>3:2<br><br>━━━ **O** ━━━<br><br>**O**<br>3:1<br><br>**oath**<br>58:9 60:8<br><br>**object** | 4:11 7:14<br>14:4,25 19:11<br>22:25 37:12<br>39:6 48:22,25<br><br>**objected**<br>5:18<br><br>**objection**<br>14:14 30:15<br>33:19 35:1<br><br>**objections**<br>5:20<br><br>**obviously**<br>50:20<br><br>**occasionally**<br>20:2<br><br>**occurred**<br>26:7 28:3<br>55:2,21<br><br>**offer**<br>58:8<br><br>**office**<br>13:12,15 15:4<br>17:4 18:20<br>20:16 24:21<br>25:23 33:7<br>39:13 55:18<br>56:6<br><br>**Oh**<br>42:11<br><br>**Okay**<br>3:17,24 5:7,<br>14 6:1,8 7:4,<br>25 9:7 14:13<br>18:7,17 20:25<br>21:4,21,22<br>22:18 24:18<br>25:12 26:6<br>27:9,11 28:9<br>33:12 35:7<br>36:21 37:24<br>45:2,23 46:4,<br>24 48:1<br>49:20,23 | 54:15 56:7<br>57:10<br><br>**Okoneski**<br>2:7 4:2,6<br>5:7,14,17<br>6:1,8 7:14<br>14:3,8,25<br>16:14 17:8,<br>13,24 19:11<br>22:25 23:10<br>29:10 30:1,16<br>33:18 34:3,12<br>35:1,11 37:12<br>39:5,10 40:9<br>48:25 54:11,<br>15 56:12,18<br>57:2<br><br>**old**<br>45:16<br><br>**once**<br>21:11 25:4<br>41:6<br><br>**open**<br>12:18<br><br>**opened**<br>37:20<br><br>**opportunity**<br>12:13 39:19<br>55:25 56:13,<br>14<br><br>**order**<br>27:20 36:12<br>44:6<br><br>**original**<br>21:24 45:16,<br>22,25 46:2,5<br><br>**originally**<br>42:22 51:1<br><br>**originated**<br>21:17<br><br>**outcome**<br>60:16 | **outset**<br>4:3<br><br>**over**<br>21:8 25:20<br>32:1 38:11<br>39:14 49:9<br><br>**owned**<br>11:14 19:7<br>25:18 37:6<br><br>**owner**<br>34:10,25<br>47:17 48:13,<br>15<br><br>**owns**<br>37:9<br><br>━━━ **P** ━━━<br><br>**P**<br>3:1<br><br>**Page**<br>2:16 22:19<br>25:13 39:8<br>58:15,18,21,<br>23 59:1,4,6,<br>9,10<br><br>**paid**<br>10:15 37:21<br>49:18<br><br>**paper**<br>25:6<br><br>**paragraph**<br>39:8<br><br>**paraphrasing**<br>37:8<br><br>**part**<br>5:4 6:7 18:13<br>28:13 29:16<br>37:22 40:21<br>42:2 55:5<br><br>**particular**<br>21:6<br><br>**parties** |

Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com



ESQUIRE
an Alexander Gallo Company

20:11 60:15

**partner**
8:11 9:4 52:5

**part-time**
9:1

**party**
6:19

**password**
27:2,22 36:11
38:9 41:12,
15,23

**paste**
44:19,23 45:7

**Patricia**
18:5

**Paul**
2:3 3:11 4:2
14:9 18:18,20
19:14 23:21
24:4 26:9
28:5,7,20
33:19 35:12
37:17 39:5
44:8,22 46:20
50:21 51:22
52:20,21,22,
23,25 53:1,10
54:11 55:14
56:19,22

**pay**
26:25

**paying**
44:6

**PENALTY**
58:4

**people**
13:5 27:21
30:25 37:21
47:4 52:19

**percent**
49:21

**perfectly**

23:11

**period**
8:10 32:4,11,
13

**PERJURY**
58:4

**permission**
40:18

**person**
7:23 13:12,21
16:24 18:25
19:20 21:23
27:12

**personally**
19:23

**perspective**
25:19

**Peter**
2:9

**phone**
16:21 17:15
20:17,24
27:25 31:21,
25 47:14 49:9

**phony**
45:13

**piece**
42:4

**place**
12:11 15:20
55:19

**placed**
14:20 19:15
37:4

**Plaintiff**
1:4 2:2 3:13
6:23 20:10,12
40:6

**plea**
55:5

**pleading**
54:3

**please**
57:3

**plural**
30:23

**point**
14:19 17:14
20:21 22:6
27:9 33:6
37:25 38:7,10
52:15

**police**
27:25 28:4,5,
7,20 50:22
51:14 52:20,
21,22,23,25
53:1,10

**position**
52:2,3,4

**possible**
31:12,17
38:20

**possibly**
43:2

**postal**
13:8 20:15
21:12 24:8,20
25:15 28:25
29:6 30:21,25
31:2,8 33:1
47:3 52:19
56:5

**posted**
42:12

**potential**
28:21

**power**
38:16

**preposterous**
21:7

**present**
2:9

**preserve**

40:23 41:2,8,
9 42:8

**pretty**
33:5

**previous**
17:2

**primarily**
10:19

**principal**
4:7

**principle**
11:25

**print**
48:6

**printed**
6:3 23:23
35:22 48:3

**printout**
35:16

**prior**
30:24

**probably**
16:17 32:20
39:22 46:1
50:6

**problem**
9:13

**proceeding**
6:15

**process**
38:19

**produce**
38:6,7 46:16,
21

**produced**
11:5 16:7,9,
10 42:24
45:24 46:7

**product**
10:13,16,23
11:4,15,18

12:7,11

**proportion**
51:6

**proposal**
12:17

**prove**
22:9

**proved**
45:17,20

**provide**
15:6 27:3

**provided**
12:25 25:11

**Public**
1:15 55:1,4
60:6

**publication**
8:12

**published**
9:9

**publishing**
9:10 22:14

**purportedly**
20:10

**pursuant**
1:13

**pursued**
11:1

**put**
3:25 34:8

**putting**
30:12

---
**Q**
---

**question**
3:20 8:23
12:9 14:12,13
19:12 23:4,24
24:9,18 25:9
37:16 39:6
40:12,15
46:15 47:22



Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

49:13 50:3

**questionable**
52:15

**questioning**
28:1

**questions**
4:24 5:13,18
27:4 40:10,14
56:14,20,25

**quickly**
55:23

**quite**
55:15

---
R
---

**R**
3:1

**Ramsey**
1:16 60:2,7

**ran**
8:10

**reached**
11:6

**reacted**
55:22

**read**
44:4 55:4
57:3,5 58:5,6

**reading**
60:17

**reads**
44:3

**ready**
56:22

**real**
49:8

**really**
9:15 18:11
21:1 38:11
50:4

**reason**
32:2 58:17,

20,22,25
59:3,5,8

**reasonable**
23:14 52:7

**reasons**
15:23

**rebate**
17:7 18:17

**recall**
15:2 23:11
24:3

**received**
16:20 20:16
21:2 27:25
45:15

**recollection**
23:17 29:11

**record**
4:1,17 14:14
15:10 33:4
34:9 35:14
37:14 52:6
56:15,16,18
60:13

**recorded**
3:21 57:6
60:12

**records**
9:22 55:1,4

**recovery**
10:13 12:1,7,
10

**refer**
39:25 44:13

**reference**
40:1

**referenced**
40:4

**referred**
12:19 17:6

**referring**
13:24 20:13

**refresh**
23:16

**regarding**
14:21

**register**
49:11

**registrant**
35:25 36:6

**relate**
13:23 14:17
22:23 24:3,7
39:4,13

**related**
29:13 31:13
50:17 60:15

**relates**
26:22

**relating**
22:22 26:2
36:17

**relationship**
8:1

**relative**
60:10

**release**
32:9

**released**
32:18

**relevant**
23:8 24:11,16

**remember**
10:10 32:24
39:21 51:4

**report**
35:9

**REPORTER**
60:23

**request**
23:14

**requested**
11:20

**reservations**
32:8

**resolved**
38:17 42:13

**responded**
52:24

**result**
32:16

**retain**
27:20

**revert**
50:3

**review**
23:12,15
39:15

**right**
3:11 4:21
6:22 8:5
14:16 16:13
19:1 30:18
33:15 39:25
43:23 44:1
52:13 56:10

**rightful**
48:13,15,19

**rights**
41:10

**role**
10:18

**roughly**
14:22 51:4

**running**
8:14 12:5

---
S
---

**S**
3:1

**sales**
10:16

**samples**
11:17

**sat**

38:1

**save**
58:6

**saw**
46:17 55:5

**saying**
19:1 30:22
37:9 43:3
45:12

**scene**
50:2

**scenes**
26:13

**screen**
35:16

**seal**
60:19

**second**
20:7 29:10
33:18 40:10
44:5 56:12

**see**
4:12 16:4
29:18 30:10
31:11 35:24
41:7 42:2,21
43:9 44:20,24
45:6 55:6,7

**seen**
6:6 12:21
35:17,19
42:18,25 46:6

**send**
11:21 44:6
52:1

**sent**
6:4 17:4
20:12 21:5,
11,25 47:16

**separate**
4:15,16 5:9,
21 28:6 53:23



ESQUIRE
an Alexander Gallo Company

Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                              August 18, 2011
                                                                     72

separately
48:14

service
25:15 29:6
30:21 31:2,8

services
19:22

set
21:14 27:14
41:4 43:19
50:5

share
33:6,8,9

SHEET
58:1,8,14

short
46:16 56:17

shot
35:16

show
35:10 38:23

showed
22:1

shown
46:18

shows
10:24,25
35:24 45:23

side
4:10 8:13,15

sign
56:25 57:3

signature
44:5 57:1
59:14

signed
13:1 58:9

signing
60:17

similar
35:19 36:19

44:11

simply
12:18 17:19

simultaneousl
y
9:5 31:19
32:3

site
32:7

size
11:2

slowly
3:18

smeared
51:13

Social
48:10

somewhere
44:18 46:2
52:18

sorry
9:12,15 17:8
25:13 41:16

sort
7:11

sought
11:7

sounded
31:14

source
43:8,10

South
1:17 2:3

speak
3:18 39:7

specific
31:3

Specifically
15:23 24:15
25:10

speculation
15:1

spellings
57:8

spent
31:24

spoken
20:19,20
49:7,8

St
18:18,20
28:5,7,20
44:8 50:21
52:20,21,22,
23,25 53:1,10

stage
11:22 16:3
18:10 28:12
51:7

standpoint
20:4 36:6

start
4:9 44:6 49:8

started
4:18 11:11
18:11

State
1:16 42:23
46:9 55:20,21
60:1,7

stated
40:21

statement
40:24

STATES
1:1 22:20

stenotype
60:12

stipulations
3:25

straightened

52:8

straightforw
ard
8:25

Street
2:3,7 44:7

stucco
7:1

stuff
11:21 25:21
26:18 27:10,
21 31:23
32:1,9 33:10
37:19,21 42:6
50:2,13

subject
4:18 5:19
43:13,22

submitting
56:24

successful
51:2

suggesting
47:16

suit
14:20 37:4
42:22

Suite
2:4

Sunday
51:18

sure
3:21 6:10,11
7:25 8:15,23
10:1 11:9
13:4 16:20
18:10,15
22:11 23:4
27:8 34:17
40:21 46:24
48:2 53:15
56:9 57:5

suspect
15:22 32:19

suspected
15:11,19,20

suspicion
45:8,10

suspicions
15:24

suspicious
29:13

sworn
3:5 60:9

────────────
        T
────────────

table
16:18

take
12:14 16:18
21:8 30:7
34:4 39:8
42:17 44:16
51:10 55:16

taken
1:13,14,16
16:5 25:20
33:13 39:16,
19 50:6 55:19
56:17 58:5

Taking
1:13 15:20

talk
51:23

talked
53:13

talking
13:25 17:1
23:13 27:21
54:9,12

technical
7:11,12 12:6,
16 34:7 36:1
37:22 50:9



ESQUIRE
an Alexander Gallo Company

Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                              August 18, 2011
                                                                    73

**Technologies**
10:3 26:8
29:14 52:6,12

**Technology**
43:18

**telephone**
51:1

**tell**
14:11 16:22
35:2 44:22
46:19 50:18
51:20,23,25

**telling**
30:2

**ten**
19:4

**testified**
3:6 34:13

**testify**
60:10

**testifying**
60:9

**testimony**
60:11,13

**testing**
11:19

**Thank**
7:16 54:15
56:11,19,23

**thanks**
6:1 17:13

**themselves**
39:7

**thereof**
60:7

**thing**
3:17 4:19
44:12,19 52:9

**things**
4:10 8:12
11:13 15:11

18:11 20:5
26:7,10,22,25
31:18 32:21,
25 34:5
38:11,17,23
40:19 41:20
52:7 57:7,9

**think**
4:20 5:3,12,
17 9:18 16:16
22:12 24:15,
18 29:3 30:12
33:4,20 35:3
40:4,15,17
42:20 43:18,
20 50:10
52:14 56:7,10

**THOMAS**
1:12 2:7,14
3:4 58:11
59:15 60:4

**thought**
21:3

**three**
4:22 15:4,10

**throughout**
32:3 38:18

**time**
3:16 4:1,20
8:10 11:7
17:14 20:22
22:12 24:23
29:25 30:5
32:4,11,13,
23,25 33:13
35:7 38:10
39:17 42:1
46:17 47:5
52:7 53:13
56:21

**timing**
25:19 47:3

**title**

34:4,15

**today**
4:14,23 9:23,
24

**together**
9:17 10:3
11:11

**told**
9:3 17:17
45:15 52:10,
15 55:16

**Tom**
1:6 4:4 16:12
23:3,10 29:10
35:25 37:13
40:9 43:15,
23,25

**top**
35:16

**trade**
10:25

**trail**
25:6

**transcribed**
3:19 60:12

**transcript**
57:5 58:5

**transfer**
38:11 51:21

**transferred**
33:25 34:15

**transferring**
33:15 34:3
41:10,14,17

**travel**
22:11

**true**
25:16 37:2
40:2 58:6
60:13

**trust**
18:13

**truth**
60:10

**try**
14:13 15:2
23:2 37:15
44:14

**trying**
11:15 15:12
21:14 29:17,
23 31:25 34:4
52:17

**turn**
12:20 22:1
25:12 27:7
28:6,10 35:8
52:24

**turned**
22:3

**two**
9:17,23 34:1
45:9 51:10
53:17

**type**
44:24,25
45:1,3,9

**typewriting**
60:12

**typically**
16:15

---
**U**
---

**U.S**
13:8 24:13
54:14,18

**ultimately**
11:19 15:13
16:9 17:21
27:13 32:16,
18

**under**
4:3 24:24
27:6 38:1
43:19 50:11

58:4,8 60:12

**underneath**
27:15 42:5

**understand**
8:23 14:7
23:4 24:18
26:12 37:18,
22 40:12,15
49:15 50:4
52:17

**understandin
g**
4:4 26:24
54:2 58:8

**unfolding**
38:24

**UNITED**
1:1 22:20

**use**
5:4

**user**
27:1

---
**V**
---

**v**
14:18 24:14
54:14

**various**
20:11

**vendor**
20:19 21:25
45:16

**vendors**
20:17,21

**verification**
43:22

**verify**
43:20

**verses**
22:21

**versus**
14:1



Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                            August 18, 2011

74

**Vic**
19:1,3,4,19
20:9 21:23,25
26:19 43:6
49:13 50:3,6,
12
**Vicki**
1:14 60:22
**victim**
38:15
**viewed**
21:13
**virtue**
60:7
**volunteered**
29:12
**vs**
1:5 58:2

---
**W**
---

**Wait**
3:19
**waive**
56:25
**waived**
60:18
**walked**
25:22
**want**
9:24 12:2
19:12 21:3
23:12 24:4
25:21 32:9
39:1 40:7,13
41:1 43:20
44:4,13 50:13
56:8,25 57:1,
8
**wanted**
6:10 15:7,15,
25 17:20 18:9
26:12 29:15,
17,18 30:10

38:9 41:8
51:15
**wanting**
3:25
**wants**
16:19 34:5
38:14
**wasn't**
17:19 45:2
51:16
**water**
7:2
**way**
22:23 26:16,
21 27:13 28:6
30:18 36:5
51:22
**web**
17:7,11 35:16
**website**
20:4 24:24
26:17 29:19
36:10 49:17
50:2
**websites**
20:5 40:23
42:12,15 48:8
50:14
**weeks**
32:24 51:11
53:17 55:17
**we'll**
16:18 52:9
57:2
**went**
16:21 21:22
**weren't**
8:21
**whatever**
31:6
**whether**
43:7

**whole**
38:19,21 51:5
60:10
**willing**
27:3
**wish**
56:15
**within**
12:24 20:18
25:22 26:14
28:7 45:3
52:16 55:17
**witness**
3:5 6:14
17:11 57:10
60:9,12,13,
17,19
**wondered**
21:1
**words**
30:12
**work**
10:20 19:23,
25
**worked**
9:4 18:1 19:7
43:6
**working**
8:19 9:17
11:11
**works**
51:22,25
**world**
22:8
**worry**
17:18
**wouldn't**
39:20 44:16
51:2
**write**
43:3 44:10

**wrong**
29:3

---
**Y**
---

**yeah**
3:16 13:17
24:5 35:4
42:11 43:17
51:5 55:8
**year**
9:9,18 11:10,
12
**years**
8:9,19 9:5,
17,23 19:5
**York**
6:7,18 17:5
18:18 22:4,
11,12 42:23
46:8,9 54:8
55:20
**yourself**
5:2 22:18
33:16 49:2,24

---
**'**
---

**'08**
16:20

---
**1**
---

**1**
2:19 3:2 4:25
12:21 22:19
**100**
2:3
**1030**
57:11
**17**
46:11,12
**17th**
46:24
**18**
1:17 60:5

**1900**
2:4

---
**2**
---

**2**
2:19 3:2 6:2
20:6 22:18
35:8,14 39:3
**20**
9:5
**2005**
9:25
**2007**
15:24 49:22
**2008**
13:11 14:22
46:11,12
**2011**
1:17 58:9
60:5,20
**2223**
2:7
**22nd**
60:19
**247**
17:12 26:5
36:2,14 37:9
43:15,25
46:10,13,25
47:17,18,20,
24 48:23
**262990**
58:1

---
**3**
---

**3**
2:17,19 3:2
35:10 42:17,
18
**300**
39:22
**30-some**
8:19



Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com

Thomas Kane                                    August 18, 2011
                                                          75

**34**
8:9
―――――――――――   4
**4**
9:25
**400**
39:22
**4th**
1:17
―――――――――――   5
**5**
22:19
**5000**
44:6,17
**55106**
44:8
**55109**
2:8
**55402**
2:4
―――――――――――   6
**6**
25:13 39:8
**674**
44:7
**6th**
44:7
―――――――――――   7
**701**
1:17
―――――――――――   '
**'80s**
22:13
―――――――――――   9
**9**
25:13
**900**
1:19



Toll Free: 866.646.0618
Facsimile: 612.332.4233

Suite 500
701 4th Avenue South
Minneapolis, MN 55415
www.esquiresolutions.com