UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Chaim Lowenstein,

      Plaintiff,

v.

Tom Kane, Jr. and
Dietz-Kane & Associates Insurance
Agency, Inc.,

      Defendants.

CIVIL NO.: 10-CV-02857-SRN-AJB

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SANCTIONS**

---

## INRODUCTION

Defendants Tom Kane Jr. ("Kane") and Dietz-Kane & Associates Insurance Agency, Inc. ("Deitz-Kane"), submit this Memorandum in support of their Motion for Sanctions against: Plaintiff Chaim Lowenstein; his attorneys Bridget A. Sullivan ("Sullivan"), Todd L. Gurstel, and the law firm of Gurstel Chargo, P.A.; and Paul A. Godfread ("Godfread") and Godfread Law Firm. In accordance with Fed. R. Civ. P. 11(c)(2) this motion was served at least 21 days before it was filed or presented to the Court.

## STATEMENT OF FACTS

1. In addition to the facts provided below, Defendants may from time-to-time cite documents already contained in the record in this action and/or respectfully request that the Court adopt the facts described in Defendants' "Statement of Facts" in their motion for judgment on the pleadings [Docket No. 24] and memorandum in opposition to Plaintiff's motion [Docket No. 51] as conjoined with these facts.

1

2. Plaintiff filed suit against Defendants (and GoDaddy) in New York in the fall of 2008. [Case 08-cv-4730-SLT-LB] ("NY Case"). The facts and circumstances are identical to those in this action. In the NY Case, Plaintiff filed a Request to Proceed *In Forma Pauepris*. (Sanction Aff. of Okoneski, Exhibit #1). In ¶ 3 of the Request, Plaintiff states that he had no source of income in the previous 12 months. Based upon Plaintiff's certification, the court granted his request to proceed Pro Se. [Docket No. #3]. The NY case was dismissed as against Kane and Dietz-Kane for lack of personal jurisdiction in September of 2009. [Docket no. 39]. Kane and/or Dietz-Kane incurred over $21,000.00 in legal fees and costs in the NY Case. (Kane's Counterclaims at ¶ 61).

3. In or about July or August of 2010 Plaintiff was indicted and arrested for mail fraud by the United States of America. (Case No. 10-cr-583 – DLI). On August 1, 2010 Plaintiff was released from incarceration upon a $500,000 bond, wherein Plaintiff deposited with the court cash in the amount of $76,000. [Case No. 10-cr-583; Docket No. 16] (Sanction Aff. of Okoneski, Exhibit #2).

4. The postal inspector, Ms. Maria Albright, who investigated Plaintiff's criminal activities leading to his arrest, reports that the United States seized from Plaintiff about $575,000 in cash and other assets within months of Plaintiff's indictment. (Sanctions Aff. of Kane, ¶ 2).

5. On October 20, 2010 the Court ordered a settlement conference for November 8, 2010 which required the attendance of counsel and all parties. [Docket No. 18]. By letter received by the Court on November 1, 2010 Plaintiff requested leave to appear at the settlement conference telephonically. After discussing Plaintiff's request with counsel for the parties, Chief Magistrate Judge Boylan denied Plaintiff's request and ordered Chaim

Lowenstein to appear in person. [Docket No. 23]. Lowenstein did not appear at the settlement conference, but was represented by Sullivan and Godfread. Judge Boylan inquired of Sullivan why Lowenstein had not appeared. As Okoneski recalls, Sullivan was unable to describe any attempts on her part to ensure Lowenstein's attendance. Eventually (perhaps after speaking with Lowenstein by phone), Sullivan stated that Lowenstein had not appeared because he was restricted by his conditions of release and bond from leaving the New York City area. Judge Boylan immediately pointed out to Sullivan that by the terms of the Order Setting Conditions, Lowenstein could leave the area with permission of the court. When queried by Judge Boylan about whether Lowenstein had even attempted to get permission of his court to attend the Settlement Conference, Sullivan had to admit that she had no reason to believe Lowenstein had done so. In deference to the efforts of Judge Boylan to attempt meaningful settlement conference as long as counsel, Defendants and the Court had set time aside, Defendants agreed to discuss same, albeit with Plaintiff's counsel only being able to speak with Plaintiff by telephone sporadically. Settlement discussion did not end in an agreement. (Sanctions Aff. of Okoneski, ¶ 4).

6. After the failed settlement conference, Judge Boylan ordered the parties to appear on November 22, 2010 for a continued Settlement Conference. [Docket No. 25]. Defendants their counsel, and Godfread appeared. Lowenstein again failed to appear. Sullivan filed a Notice of Withdrawal on November 22, 2010. [Docket No. 28]. No settlement was reached.

7. Godfread filed an attempted Amended Complaint in contravention of the rules and in violation of the Court's Pretrial Scheduling Order. The Complaint in this case does not

contain a Count for Anti-Cybersquatting [Docket No. 1]. Fed. R. Civ. P. 15 provided Plaintiff a number of opportunities, as matter of course, to amend his Complaint or his Reply to Defendants' pleadings to include such a Count, but Plaintiff did not. After the expiration of the various 21 day periods described in Rule 15(a)(1)(A) and (B), a party may only amend its pleadings with the opposing party's written consent or the court's leave. Fed. R. Civ. P 15(a)(2). The Court's Pretrial Scheduling Order established January 1, 2011 as the deadline for the service of motions which seek to amend the pleadings. [Docket No. 19]. Plaintiff did not receive from Defendants the required written consent to amend his pleadings to include a Count for Anti-Cybersquatting. Plaintiff did not bring a motion before the court to request leave to so amend.

## ARGUMENT

Federal courts generally have three sources of power from which to impose sanctions:

1. **Federal Rule of Civil Procedure 11** authorizes federal courts to issue sanctions against parties or their attorneys who file papers for an improper purpose or lack a required level of evidentiary support. The aim of Rule 11 is to deter frivolous filings and to "curb abuses of the judicial system". _Cooter & Gell v. Hartmarx Corp., 496 U.S. 384,_ 397 (1990).

2. **28 U.S.C. §1927** authorizes sanctions in the form of "excess costs, expense and attorneys fees" against any attorney who "multiplies the proceedings in any case unreasonably and vexatiously." _Oliveri v. Thompson, 803 F.2d, 1265,_ 1276 (2d Cir. 1986); *see also, Dreilling v. Peugot Motors of America, 768 F.2d1159,* 1165 (10th Cir. 1985).

3. The **Inherent Power of the Court** to impose sanctions" is not limited to what is enumerated in statutes or in the rules of civil procedure." *See* Danielle Kie Hart, _And the chill goes on—Federal Civil Rights Plaintiffs Beware: Rule 11Vis-a-Vis 28 U.S.C. §1927_

4

*and the Court's Inherent Power*, 37 Loy. L.A. L. Rev. 645 (2004).  Federal Courts have the inherent power to punish persons who abuse the judicial process.  The inherent power of the court is an "implied power squeezed from the need to make the courts function." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991) (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990)).

These sources of power to sanction overlap and are not necessarily mutually exclusive. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (finding that, despite Rule 11 and 28 U.S.C. §1927 being both potentially applicable, the court was not required to resort to using them when the inherent power of the court was best suited to the facts).  Rule 11 and §1927 do not displace the court's inherent power, but instead they exist concurrently.  *Id.* at 46, 49 ("The court's prior cases have indicated that the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct").

Based upon the facts and the argument to follow, Defendants will show that there are ample and compelling reasons and authority for the court to sanction Plaintiff and his attorneys for their behavior in this law suit.

## I.  Sanctions As Against Sullivan, Her Firm and Plaintiff.

**A.  Pleadings Sanctions as Related to Sullivan, Her Firm and Plaintiff.**

Sullivan was required by Rule 11 to sign the pleadings.  Fed. R. Civ. P. 11(a).  The Supreme Court has noted "[t]he essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit.  A signature sends a message to the district court that this document is to be taken seriously."  *Bus. Guides, Inc. v. Chromatic Communications Enters.*, 498 U.S. 533, 546 (1991).  As

a licensed attorney, Sullivan knew that she and her firm were subject to scrutiny and possible sanctions by the court when they prepared the complaint in this action. Fed. R. Civ. P. 11(c)(1).

Rule 11 also authorizes the court to sanction parties that violate the rule or are responsible for the violation. Fed. R. Civ. P. 11(c). It is important, in this case, that the court utilize a Rule 11 analysis in determining whether sanctions are warranted, because Plaintiff can be sanctioned under Rule 11 and Plaintiff is just as, or even more culpable of the violations described herein, than his attorneys.

Rule 11 enumerates standards to which the litigants and counsel must adhere when presenting materials to the court. Rule 11(b) provides that before presenting pleadings to the court, whether by signing, filing, or advocating it – an attorney certifies that to the best of the person's knowledge, information and belief, *formed after an inquiry reasonable under the circumstances (emphasis added),* that the material presented is not filed for an improper purpose and has the requisite *degree of evidentiary* (*emphasis added*) and legal support. Fed. R. Civ. P 11(b).

We will discuss the requisite degree of evidentiary and legal support first. Sullivan did not make a reasonable inquiry and either had no evidence or failed to provide any evidence to support the trademark and copyright infringement claims she asserted in conjunction with Plaintiff. As told to Defendants' attorney by Sullivan, Plaintiff contacted the Gurstel firm at the recommendation a friend of his who went to college with Gurstel's wife. Plaintiff told the Gurstel firm that his law suit against Defendants had been dismissed in New York for lack of personal jurisdiction and that he wanted to recommence the suit in Minnesota. Because the suit had been commenced before and due to the referral connection, it appears that Sullivan and her firm merely drafted pleadings that were a condensed version of the New York pleadings or used pleadings supplied by Plaintiff.

Had Sullivan and the Gurstel firm made a reasonable inquiry and asked Plaintiff for actual evidence to support the proof requirements of Plaintiff's legal claims, they would have provided same in and with their pleadings. Sullivan and her firm should have had a heightened sense of the need to make a reasonable inquiry in these circumstances, because Plaintiff was Pro Se in his New York action and the sufficiency of his legal theories and evidence in support thereof had not been vetted by an experienced attorney. The insufficiency of the legal support and requisite evidence represented by the Plaintiff's pleadings are discussed at length in Defendants' motion for judgment on the pleadings and in their memorandum in opposition to Plaintiff's motion. So for purposes of this motion only a short summary of each failure of Plaintiff and Sullivan to produce any evidence in support their pleadings is provided below.

## COUNT I

Count I of the Complaint alleges violation of 15 U.S.C. §1114 - §1117 (Federal Trademark Infringement). A required element of proof for this cause of action is that Kane must have used the mark in connection with the sale of goods or services in a manner likely to cause confusion as to the source of the goods or services. The pleadings prepared by Sullivan and her firm, merely assert a simple conclusion that Defendants transacted business using Plaintiff's trademarked works ("Works"). Any reasonable person might think to inquire why an insurance agent, his agency, and a partner with Plaintiff in an electronic data storage and recovery business, would suddenly get the urge to be in the coffee business, much less by "stealing' his own partner's coffee related domain names. The absurdity of the situation should have led to a lawyerly inquiry. Case law in trademark infringement cases requires at the pleadings stage the exhibition of an advertisement or some other form of hard copy evidence that a Defendant used Plaintiff's Works "in commerce". Such other

7

evidence would typically be website page, domain name searches, sales receipts, invoices, label from a bag of coffee, etc. The pleadings are devoid of such exhibits because they do not exist. A reasonable inquiry by Sullivan and her firm should have caused them not to plead this count.

## COUNT II

Count II of the Complaint alleges violation of Minn. Stat. § 325D.44 (Minnesota Deceptive Trade Practices Act – "DTPA"). The foremost required element of proof in a claim under DPTA is that Defendants must have made a false or misleading statement in commercial advertising that somehow relates to goods and services offered for sale by Lowenstein. If such a statement were made in an advertisement, certainly a reasonable inquiry by Sullivan and her firm to have Plaintiff provide a copy of the advertisement might have led to a colorable reason to include a DTPA claim in the complaint. The fact that no exhibit of any advertisement is included with the complaint means that such does not exist, that Sullivan did inquire about such and Plaintiff refused to provide it, or that the inquiry was never made. None of these results provides the evidentiary support needed to support a DTPA claim in the complaint.

## COUNT IV

Count IV of the Complaint alleges violation of the common law of unfair competition. Once again, any reasonable inquiry by Sullivan and her firm would have disclosed that Defendants had not used the marks that are the subject matter of this litigation in any commercial sense whatsoever, competitive or otherwise.

## COUNT V

Count V of the Complaint alleges Copyright Infringement. The complaint contains no exhibits that show Plaintiff's Copyright Registrations or show that Defendants have copied or reproduced Plaintiff's works in any way, have created any derivative works, and have distributed copies of the Work(s) to the public for sale. The fact that no exhibit showing "copying" of any kind is included with the complaint means that such does not exist, that Sullivan did inquire about such and Plaintiff refused to provide it, or that the inquiry was never made. None of these results provides the evidentiary support needed to support a DTPA claim in the complaint.

## COUNT VI

Count VI of the Complaint alleges Conversion. Federal Trademark law preempts any state statutory or common law conversion. Under state law only tangible property can be converted to the unlawful use of another. Intellectual property rights are not tangible objects. Federal courts recognize this difference and therefore uniformly rule that the Copyright Act preempts all state and common law conversion acts. Thus, this count is not warranted by existing law and is frivolous if Sullivan and her firm contend that this well established rule of law should be extended, modified, reversed or that new law should be made in these circumstances. This count should not have been included in the complaint as a matter of law and such inclusion invokes the scrutiny of the court in applying Fed. R. Civ. P. 11(b)(2).

Based upon the forgoing, it is clear that Sullivan and her firm did not make a reasonable inquiry under the circumstances and assisted Plaintiff in presenting a complaint that contained no evidence of the claims made therein.

**B. Sanctions for Contempt of Court Order as Related to Sullivan, her firm and Plaintiff.**

At the request of counsel for all parties, the Court ordered the Settlement Conference and requiring party attendance described in the Statement of Facts in this memorandum at ¶ 5. Defendants are entitled to a finding of contempt and sanctions. The Court shall find that a party is in contempt if three elements are found: (1) the order itself is clear and unambiguous; (2) the proof of non-compliance is clear and convincing; and (3) the party has not diligently attempted in a reasonable manner to comply. *Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950, 954-955 (D. Minn. 1999). The order clearly requires that the parties appear. Lowenstein did not appear. Lowenstein made no attempt to comply. Lowenstein had time to make arrangements to appear. Lowenstein knew of the requirement to appear in person and through counsel requested leave to appear telephonically. His request was denied by the Court. By admission of counsel at the Settlement Conference, Lowenstein had no valid reason not to attend and counsel had made no particular effort to ensure Lowenstein's attendance. Thus, all three prongs of the *Lexi-Nexis* are met and Plaintiff should be found in contempt.

Fed. R. Civ. P. 16(f)(1)(A) provides that the Court may issue any just orders if a party fails to appear at a pretrial conference. A Settlement Conference qualifies as a pretrial conference under Fed. R. Civ. P. 16(a)(5). The court must order the party, its attorney, or both to pay the reasonable expenses-including attorney's fees-incurred because of non-compliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses

unjust. Fed. R. Civ. P. 16(f)(2). Defendants counsel prepared for and attended the Settlement Conference, as did Kane on behalf of both Defendants. (Sanctions Aff. of Okoneski, ¶ 5). Kane's expenses for missing business opportunities and lack of production are difficult to determine, so the Court should use its best judgment in awarding an amount to Kane that is likely to have an element of deterrence upon Plaintiff. Kane's incurred attorney fees are quantifiable and are identified.

## II.      Sanctions As Against Godfread And Plaintiff.

### A. Sanctions for Contempt of Court Order as Related to Godfread and Plaintiff.

The Court ordered a continued Settlement Conference and required party attendance as described in the Statement of Facts of this memorandum at ¶ 6. Sullivan had withdrawn as counsel and Godfread was substituted in as counsel for the continued Settlement Conference. Again, and without any explanation from Godfread, Plaintiff failed to appear as ordered. For the same reasons discussed with respect to Sullivan above, the Court should find Plaintiff and Godfread in contempt and use its best judgment in awarding an amount to Kane that is likely to have an element of deterrence upon Plaintiff. Kane's incurred attorney fees are quantifiable and are identified. (Sanctions Aff. of Okoneski, ¶ 6).

### B. Sanctions Under Fed. R. Civ. P. 11 as Related to Godfread and Plaintiff.

Defendants' letter to Godfread of July 20, 2011 describes in detail the various sanction powers available to the courts. The letter also explained in detail exactly why each of Plaintiff's claims and their denial of Defendants' counterclaims were unsupported by fact and

law. (Sanctions Aff. of Okoneski, Exhibit #4). Defendants' arguments above regarding Sullivan's Rule 11 culpability apply equally to Godfread since he became Plaintiff's attorney of record. Defendants served their Rule 11 motion at least 21 days before it was filed or presented to the Court. Plaintiff did not withdraw his claims during the "safe harbor" period, which would have alleviated the need for Defendants to bring their motion for judgment on the pleadings herein and this motion for sanctions. Instead, and in the face of the details and arguments presented in Defendants' letter of July 20, 2011, Plaintiff and Godfread brought their motion for summary judgment which Defendants had to defend.

Based upon Plaintiff's and Godfread's refusal to withdraw the pleadings that violate Rule 11 and in their bringing a motion for summary judgment on these same pleadings, the Court should award sanctions against both.

**C. Sanctions of Godfread Under Rule 11; 28 U.S.C. §1927; and The Inherent Power Of The Court.**

Rule 11(b)(1) requires that the papers not be presented for an improper purpose. Prohibited improper purposes include, but are not limited to, the needless increase in the cost of litigation.

Another basis for sanctions lies in 28 U.S.C. §1927. The statue authorizes sanctions in the form of "excess costs, expenses, and attorney's fees" against any attorney who "multiplies the proceedings in any case unreasonably and vexatiously". *Oliveri v. Thompson*, 803 F.2d 1265, 1276 (2d Cir. 1986) (internal citations omitted); *see also Dreiling v. Peugot Motors of America*, 768 F.2d1159, 1165 (10th Cir. 1985). The Eighth Circuit courts have interpret § 1927 as authorizing sanctions when attorney conduct, "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court". *Lee v. L.B. Sales Inc.*, 177 F.3d 714, 718

(8th Cir. 1999). In the Eight Circuit, malicious intent or bad purpose is not required to support sanctions.

The court also has the inherent power to punish persons who abuse the judicial process. *See* ¶ 3 of Argument above.  The inherent power to sanction is broad. *Chambers v. NASCO, Inc., 501 U.S. 32, 46, 49 (1991) (quoting NASCO, Inc. v. Calcasieu Television & Radio, Inc., 894 F.2d 696, 702 (5th Cir. 1990)).* The scope of the power reaches "any abuse" of the judicial process. *Id. at 44.* Courts also have broad discretion to determine the appropriate sanction to be imposed. *See id.* at 44, 45.

In this case, the Court should sanction Plaintiff and Godfread for: (1) arguing extensively in their motion for summary judgment the claim of cybersquatting; (2) conducting the vast majority of Godfread's deposition of Kane on the subject of cybersquatting; and (3) for directing much of their written discovery to Kane and Dietz-Kane on the subject of cybersquatting. The root of these abuses is Plaintiff's and Godfread's ill-fated attempt to file an Amended Complaint to include a count for Anti-Cybersquatting under 15 U.S.C. §1125(d).  This sequence of events is described in the Statement of Facts in this memorandum at ¶ 7.  Defendants wrote to Godfread on August 3, 2011 reminding him that cybersquatting was not a viable claim in the record, that even if it were it would be a futile claim, stating that his on litigating a claim not in the record was harming Defendants financially, and advising him to bring a motion if he were serious about this claim. (Sanctions Aff. of Okoneski, Exhibit #5).

In the face of all of the above Plaintiff and Godfread brought a motion for summary judgment based largely upon a claim they knew was not in the record and knowing that Defendants would be required  to vigorously and expensively defend. Plaintiff and Godfread needlessly, improperly, greatly, and with total or reckless disregard for the rights of these Defendants to an

orderly adjudication of this matter, increased the cost of litigation. Godfread multiplied these proceedings unreasonably, vexatiously and knowing the harm it would cause Defendants. Plaintiff and Godfread have both abused the judicial process.

The conduct of Plaintiff and Godfread with regard to their pretended cybersquatting claim is the very definition of and reason for Rule 11, 28 U.S.C. § 1125(d), and the power of the courts to punish abuse of the judicial process. The Court has broad discretion to determine the appropriate sanction to be imposed.

### D. Sanctions Against Plaintiff And Godfread For Persisting In Their Claims.

Also to be considered is the matter of the continued assertion of Plaintiff's claims for improper purposes after the initial pleadings were filed. This issue is separate and distinct from the complaint failing to provide the requisite evidence and failing to state viable claims. This issue goes to Godfread learning, after coming late to the game, that Lowenstein's motives for making trademark and copyright claims against Defendants were suspect.

To be fair to Sullivan, at the time the complaint was drafted, served and filed, she and her firm could not have known that Plaintiff was involved in criminal activities. Sullivan would only later learn that Plaintiff's criminal activities were a significant basis for Lowenstein and Kane arguing with each other and GoDaddy over who had the right to administer their company's (ArmorCore) web hosting account. (As the Court may recall, Plaintiff had used ArmorCore assets to purchase a place for his coffee related domain names within the ArmorCore owned web hosting account at GoDaddy). But, in their answers and counterclaims to Plaintiff's complaint, Defendants were diligent to provide detailed statements of fact: describing Plaintiff's illegal activities; why his illegal acts implicated them with the United States Postal Inspections Services; what business

damages Defendants have suffered; and to show that Plaintiff's trademark and copyright infringement claims were a ruse to obfuscate what should be a dispute between business partners; and that Plaintiff's claims were only asserted for an improper purpose – namely to make claims for damages, treble damages, and attorney fees that intellectual property claims might allow, whereas a ordinary business dispute would not.

A reading of Defendants' statement of facts in their counterclaims should give any attorney cause to inquire about what this case is really about and what Lowenstein was up to. Again to be fair, shortly after reviewing Defendants' statement of facts, Sullivan did ask Okoneski to explain to her how Plaintiff's rebate scam worked. Okoneski responded via email which outlined the workings of Plaintiff's scams, explained that the domain names Plaintiff was using to make his trademark and copyright claims were actually the property of ArmorCore, and that GoDaddy had determined Kane had a right to administer them. (Sanctions Aff. of Okoneski, Exhibit #3).

After this exchange of information, Okoneski and Sullivan certified to the Court that an early Settlement Conference requiring the party's attendance was warranted. As Okoneski recalls, both counsel thought the Court's involvement in ferreting out the intellectual property claims as against the realities of the fractured business partnership between Lowenstein and Kane would take place in a Court supervised settlement context. Of course, Plaintiff did not attend the Settlement Conference. Sullivan eventually withdrew and at a time when a complete understanding of the effect of Plaintiff's criminal activities was still in its infancy.

But Godfread cannot say that he has not been aware of his client's criminal behavior, history of fraud, ability to create fraudulent emails purportedly from Kane and describing Kane's and Dietz-Kane's malicious intent to take over Plaintiff's alleged coffee business, and everything else in this case that points to Plaintiff's suspect conduct and improper motivation to sue and

continue to sue Defendants for copyright and trademark infringement. All of this material is covered in Defendants' memorandum in opposition to Plaintiff's motion for summary judgment and Defendants' motion for judgment on the pleadings.

Plaintiff's and Godfread's continued and baseless assertion of Plaintiff's copyright and trademark claims knowing that Plaintiff, himself, placed his Works within the assets of a business owned by Plaintiff and Kane together, is just as much a Rule 11, 15 U.S.C. § 1125(d), and abuse of the judicial process as everything else in this case. The Court is reminded that Plaintiff has not produced a single piece of evidence in this case to show Defendants "use in commerce" of his trademarks. Similarly, Plaintiff has not produced a single example of "copying" by Defendants to support his copyright infringement claim. Defendants maintain that Plaintiff only brought his copyright and trademark claims because they may authorize damages and attorney's fees.

A normal or reasonable approach to what should be a business dispute would not suit Plaintiff's improper motive. It is a better play (as in potentially more profitable) for Plaintiff to pursue damages and fees in a pretended trademark and copyright case than to sort out with Kane the ArmorCore problems he caused. GoDaddy would release back to Plaintiff his domain names residing in ArmorCore's web hosting account, if only Plaintiff and Kane would settle their business disputes. Kane's counterclaim to account for ArmorCore's assets and dissolve the dysfunctional and non-operating company is the proper claim in this case, but for some inexplicable reason, Plaintiff denies that this relief is appropriate.

Kane has based his counterclaims squarely in line with the facts in this case and seeks relief that is warranted under the circumstances. Plaintiff, on the other hand, denies and ignores that the root of his domain name problems are his own illegal activities and his breach of the fiduciary duty he owes ArmorCore and Kane. Instead of proceeding on the real issues, Plaintiff is attempting to

parlay completely unsupported trademark and copyright claims into a judgment for damages and fees against Kane and Dietz-Kane. With Godfread's assistance, Plaintiff is abusing Defendants and the judicial process.

### E.  Sanctions Against Plaintiff For Perjury.

Plaintiff has committed perjury in these proceedings.  The first instance of perjury is that Plaintiff represented himself to be a pauper to gain Pro Se status in the NY Case.  (Statement of Facts above at ¶ 2). This case is a mere continuation of the NY Case. Yet immediately after Plaintiff's indictment for mail fraud, the United States seized about $575,000 from Plaintiff. (Statement of Facts above at ¶ 4). According to the United States Complaint for Lowenstein's Arrest Warrant, Plaintiff's illegal rebate scams go back to at least 2005. It is highly probable that Plaintiff has substantial assets at the time he certified his pauper status to the Court.  The result of Plaintiff's  perjury is that Plaintiff could proceed to abuse Kane and Ditz-Kane free of charge, while Kane and Ditz-Kane had to spend over  $21,000 to have the case dismissed.

The second instance of perjury is to lead the Court to believe that Plaintiff is actually operating a coffee business. This is not true.  Plaintiff told Kane in 2007 that his coffee business was dormant and no longer able to conduct any business because Plaintiff's operating partner had left the business.  (Sanctions Aff. of Kane, ¶ 1).  This fact is critical because the foundation of Plaintiff's pretended trademark and copyright claims is that his coffee related business would be damaged by defendants' alleged infringement.  There was no such active business when Plaintiff started the NY Case and certainly not in 2010 when Plaintiff brought this action.

## CONCLUSION

Plaintiff's has maintained his fabricated trademark and copyright claims against Defendants since 2008.  Plaintiff's purpose is to seek unwarranted damages and attorney's fees.  In the process, Plaintiff has committed perjury and refused to comply with Court orders.  Plaintiff has committed much of his abuse of Defendants , at least with respect to the case as instituted in Minnesota, with the assistance of counsel.

In the early stages, Sullivan and her firm filed the complaint against Defendants without the reasonable inquiry required by Rule 11.  The result of this lack of inquiry is that there are no facts stated in or any exhibits attached to the complaint that would support the pled trademark and copyright claims.  Sullivan and her firm were also counsel of record when their client refused to appear at the Court ordered Settlement Conference.

Subsequently, Godfread became Plaintiff's counsel of record.  Godfread was counsel of record when Plaintiff refused for the second time the Court's order for him to appear.  In over a year, Godfread and Plaintiff have failed to produce any evidence of trademark or copyright infringement. To compound Plaintiff's abuse of Defendants and the judicial system, Godfread and Plaintiff have insisted on litigating a cybersquatting claim that is not even in the record in this case.  Plaintiff, with the aid of Godfread, has steadfastly refused to withdraw the meritless trademark and copyright claims and the denial of Kane's business related counterclaim's.

The cost to Kane and Dietz-Kane to defend themselves form Plaintiff's use of them and ArmorCore in his illegal mail fraud activities, and in defending themselves in two federal court cases has been tremendous and financially ruinous to Kane, in particular. Defendants have incurred

costs and attorney fees in excess of $44,860.00. But the true costs to Kane and Dietz-Kane go beyond billings from law firms. (Sanctions Aff. of Okoneski, ¶ 10).

Kane has invested in excess of $70,000 in ArmorCore, not knowing that his partner was engaging in illegal activities and implicating ArmorCore and Kane himself in the process. Kane may have liabilities to the IRS because Plaintiff is in control of ArmorCore's financial records and refused to file tax returns. Kane has had to sue to dissolve ArmorCore. Kane and Dietz-Kane's ability to conduct their insurance business has been greatly harmed by having to disclose Plaintiff's suits to their sources of insurance business income. Kane's and Dietz-Kane's credit have been ruined because of Plaintiff's actions. (These facts are contained in Kane's Affidavit originally produced for the Court in connection with Plaintiff's unsuccessful motion to stay these proceedings. A copy of same is attached to the Sanctions Aff. of Okoneski, Exhibit #6 ).

Plaintiff, with the aid of counsel, has asserted meritless claims and abused Defendants and the judicial system. Defendants have incurred in excess of $65,860.00 (includes fees incurred in the NY Case) in costs and fees in attempt to obtain justice. Defendants' lives and businesses have been thrown into upheaval. The cost of justice should not be this high.

Defendants respectfully request that the Court use is sanction powers to compensate them and to deter Plaintiff from abusing others and the judicial system in the future.

Date:  October 17, 2011  	*Thomas J. Okoneski*
	Thomas J. Okoneski (#146791)
	Okoneski Law Firm LLC
	P.O. Box 9069
	North St. Paul, MN  55109
	Telephone:  (651)260-3524
	E-mail:  okolaw@q.com

	ATTORNEY FOR DEFENDANTS